Scott Broadwell, ABA No. 0611069
Anne Marie Tavella, ABA No. 1506045
DAVIS WRIGHT TREMAINE LLP
188 West Northern Lights Blvd., Suite 1100
Anchorage, AK 99503
Phone: (907) 257-5300
scottbroadwell@dwt.com
annemarietavella@dwt.com

Attorneys for Plaintiff Alyeska Pipeline Service Company

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA
THIRD JUDICIAL DISTRICT AT ANCHORAGE

ALYESKA PIPELINE SERVICE
COMPANY,

            Plaintiff,

vs.

JOHN ZINK COMPANY, LLC,

            Defendant.

Case No. 3AN-19- 05545 CI

## COMPLAINT

COMES NOW Alyeska Pipeline Service Company ("Alyeska"), by and through its attorneys Davis Wright Tremaine LLP, and for its Complaint against John Zink Company, LLC ("John Zink"), alleges as follows:

### I. PARTIES, JURISDICTION, AND VENUE

1. Alyeska is a Delaware Corporation with its principal place of business in Alaska.

Davis Wright Tremaine LLP
LAW OFFICES
188 West Northern Lights Blvd., Ste. 1100
Anchorage, Alaska 99503-3985
(907) 257-5300 · Fax: (907) 257-5399

4814-6859-0979v.4 0112378-000001

EXHIBIT A

Davis Wright Tremaine LLP
LAW OFFICES
188 West Northern Lights Blvd., Ste. 1100
Anchorage, Alaska 99503-3985
(907) 257-5300 · Fax: (907) 257-5399

1       2.     John Zink is a Delaware limited liability company with its principal place

2   of business in Wichita, Kansas.

3       3.     This Court has jurisdiction over the present matters pursuant to AS

4   22.10.020.

5       4.     Venue is proper in the Third Judicial District at Anchorage.

6           **II.    FACTUAL ALLEGATIONS**

7       5.     Alyeska is the entity that operates the Trans-Alaska Pipeline System

8   (TAPS) as agent on behalf of and under an operating agreement with the TAPS Owners.

9       6.     John Zink is in the business of manufacturing and selling commercial flares

10  and other equipment for emissions control and clean-air combustion systems.

11      7.     On or about May 5, 2016, Alyeska issued Purchase Order No. 16314381,

12  Rev. 0 ("Purchase Order") to John Zink for the purchase of a flare tip (a piece of

13  equipment used to burn off crude tank vapors for safety and to control air emissions) and

14  associated components for use at Pump Station 1 of TAPS, located in Deadhorse, Alaska.

15  The May 5, 2016 Purchase Order included an agreement captioned "Comprehensive PO

16  Terms and Conditions" executed by John Zink on March 11, 2016.  The total cost to

17  Alyeska to purchase the flare tip under this Purchase Order was $935,800.00.  John Zink

18  accepted and agreed to this Purchase Order on May 10, 2016.  True and correct copies of

19  the Purchase Order and agreement terms and conditions are attached as Exhibit A.

20

21

COMPLAINT
*Alyeska Pipeline Service Company v. John Zink Company, LLC*
4814-6839-0979v.4 0112378-000001

3AN-19-05545 CI
Page 2

**EXHIBIT A**

Davis Wright Tremaine LLP
LAW OFFICES
188 West Northern Lights Blvd., Ste. 1100
Anchorage, Alaska 99503-3985
(907) 257-5300 · Fax: (907) 257-5399

8.      Alyeska issued revised Purchase Order, No. 16314381, Rev. 1 to John Zink on or about May 17, 2016 to order additional items for purchase. The revised Purchase Order incorporated the same Comprehensive PO Terms and Conditions of the original Purchase Order. The total cost to Alyeska to purchase the flare tip under this new Purchase Order was $938,467.00. John Zink accepted and agreed to this revised Purchase Order on May 18, 2016. A true and correct copy of the revised Purchase Order is attached as Exhibit B.

9.      Alyeska issued revised Purchase Order No. 16314381, Rev. 2 to John Zink on or about July 25, 2016 to order additional items for purchase. This revised Purchase Order incorporated the same Comprehensive PO Terms and Conditions of the original Purchase Order. The total cost to Alyeska to purchase the flare tip under this revised Purchase Order was $983,568.50. John Zink accepted and agreed to this revised Purchase Order on July 28, 2016. A true and correct copy of the revised Purchase Order is attached as Exhibit C.

10.      The terms and conditions of the sale included John Zink's express warranty that the flare tip would be of good quality and workmanship and free from all defects (latent or patent).

11.      The terms and conditions of the sale further included John Zink's agreement to indemnify Alyeska from and against any and all loss, liability, cost, or expense, and any and all claims by or liability to any third party for loss, damage or

COMPLAINT
*Alyeska Pipeline Service Company v. John Zink Company, LLC*
4814-6859-0979v.4 0112378-000001

3AN-19-05545 CI
Page 3

1   injury to persons or property which is based on or in any manner arises out of John

2   Zink's performance or nonperformance of the Purchase Order to the extent that any loss,

3   damage, or injury results from John Zink's negligence.

4          12.     The purchased flare tip was installed at Pump Station 1 in August 2016.

5          13.     Beginning in spring 2017, Alyeska personnel at Pump Station 1 observed

6   periodic episodes of black smoke emanating from the flare tip causing opacity events,

7   and Alyeska attempted to develop methods to prevent or minimize the opacity events

8   until the cause could be identified and corrected.

9          14.     Alyeska was in communication with John Zink following discovery of the

10  opacity events in order to jointly investigate and trouble-shoot the flare tip malfunction.

11         15.     As part of the investigation, Alyeska personnel took photos of the flare tip

12  on July 11, 2017. The photos showed that the air diffuser, a primary air/vapor mixing

13  device, was no longer in place on the flare tip.

14         16.     Following the July 11, 2017 photo inspection and in consultation with John

15  Zink, Alyeska determined that the flare needed to be shut down to confirm the causes of

16  the malfunction and make repairs. The flare subsequently was shut down from September

17  7, 2017 through September 12, 2017 for such assessment and repairs.

18         17.     Alyeska inspected the flare tip while out of service with oversight by John

19  Zink's representative, Jed Swenson, and determined that the air diffuser came loose and

20

21

COMPLAINT
*Alyeska Pipeline Service Company v. John Zink Company, LLC*
4814-6859-0979v.4 0112378-000001

3AN-19- 0SS4SCI
Page 4

Davis Wright Tremaine LLP
LAW OFFICES
188 West Northern Lights Blvd., Ste. 1100
Anchorage, Alaska 99503-3983
(907) 257-5300 · Fax: (907) 257-5399

1    fell as a result of failure of the bolted connections attaching the air diffuser to the rest of

2    the flare tip.

3          18.     The air diffuser had been attached with six pairs of a single bolt with a

4    single nut. Alyeska's inspection concluded that thermal cycling and vibration during the

5    normal combustion process loosened the nuts allowing them to fall off of the bolts. Two

6    of the six pairs of bolts and nuts were recovered during the inspection, and were

7    consistent with John Zink's design drawings and documentation in terms of material and

8    size.

9          19.     Industry standards related to the design and manufacture of flare tips, and

10    specifically pertaining to bolting, provide that measures should be taken to prevent

11    bolting from coming loose due to vibrations, and the use of bolts with double nuts is

12    recommended. These standards are specifically identified in Alyeska's procurement

13    specification for the flare tip that was listed in the Purchase Order issued by Alyeska and

14    approved by John Zink.

15          20.     The failure of the air diffuser was the direct cause of the opacity events in

16    the months before the repairs were made.

17          21.     Repairs made to the flare tip included remounting the existing diffuser cone

18    with double nutted bolts to prevent another mechanical failure. Representatives of John

19    Zink were involved in the decisions to repair the flare tip.

20

21

Davis Wright Tremaine LLP
LAW OFFICES
188 West Northern Lights Blvd., Ste. 1100
Anchorage, Alaska 99503-3985
(907) 257-5300 · Fax: (907) 257-5399

Davis Wright Tremaine LLP
LAW OFFICES
188 West Northern Lights Blvd., Ste. 1100
Anchorage, Alaska 99503-3985
(907) 257-5300 · Fax: (907) 257-5399.

1    22.   John Zink was apprised of and approved of the steps required to repair the

2    flare tip, including the need to hire subcontractors to perform the work. Specifically with

3    respect to welding contractors, John Zink noted in August, 2017, "we believe Alyeska

4    will have a greater chance of success finding a local subcontractor to do the welding than

5    John Zink will. You know the local subs better than us."

6    23.   Alyeska subcontracted, as needed, purchased supplies, and otherwise

7    incurred costs in connection with the repair of the flare tip. Alyeska's total costs of repair

8    were $1,188,973.44. A true and correct summary of costs incurred by Alyeska to repair

9    the flare tip are attached as Exhibit D. In addition to the costs outlined in Exhibit D,

10   Alyeska incurred internal costs associated with shifting Alyeska resources from other

11   pipeline projects and operations, and has or may incur costs and suffer consequences as a

12   result of potential air permit violations arising from the opacity events.

13   24.   Alyeska sent John Zink notice of a potential warranty claim in connection

14   with the flare tip on July 18, 2017. Alyeska subsequently followed up with a February

15   14, 2018 warranty and indemnification claim to John Zink by email which included

16   details of the costs incurred.

17   25.   John Zink denied Alyeska's warranty claim, stating that "our warranty

18   obligations under Section 3 [of the terms and conditions] are for the direct cost of repair

19   or replacement of the tip. [John Zink] believes that we met and exceeded our contractual

20

21

obligations by providing the advance supply of repair components as well as the onsite support rendered at the time of the inspection and repair."

26. Despite John Zink's warranty and indemnity obligations under the applicable terms and conditions, John Zink has not reimbursed Alyeska any of its costs incurred in connection with the repair of the flare tip and has billed Alyeska for John Zink's personnel time spent evaluating and repairing the defective flare tip.

## III. FIRST CAUSE OF ACTION—BREACH OF CONTRACT WARRANTY PROVISIONS

27. The terms and conditions of the Purchase Order under which Alyeska purchased the flare tip included John Zink's express warranty that the flare tip would be of good quality and workmanship and free from all defects (latent or patent).

28. The flare tip was not of good quality and workmanship or free from all defects (latent or patent).

29. The terms and conditions of the Purchase Order under which Alyeska purchased the flare tip included John Zink's express warranty that the flare tip would conform to all specifications, drawings, descriptions and statements of work furnished, specified or agreed to in the Purchase Order.

30. The flare tip did not conform to all specifications, drawings, descriptions and statements of work furnished, specified or agreed to in the Purchase Order.

31. Under the terms of John Zink's warranty, John Zink was required to repair or replace the flare tip.

COMPLAINT
*Alyeska Pipeline Service Company v. John Zink Company, LLC*
4814-6859-0979v.4 0112378-000001

3AN-19-0SS4SCI
Page 7

EXHIBIT A

32. In consultation with John Zink, Alyeska incurred at least $1,188,973.44 in costs to repair the flare tip. All of Alyeska's costs were incurred directly in connection with the repair of the flare tip and are costs John Zink would have incurred had it completed the repair itself rather than having Alyeska complete the repairs with John Zink's consultation.

33. John Zink refused to reimburse Alyeska's costs of repair.

34. By refusing to reimburse Alyeska's costs, John Zink is in breach of the warranty provisions of the flare tip Purchase Order.

35. Alyeska has been damaged by John Zink's breach of warranty in the amount of at least $1,188,973.44 with the exact amount to be proven at trial.

36. John Zink is liable to Alyeska for John Zink's breach of warranty.

## IV. SECOND CAUSE OF ACTION—BREACH OF CONTRACT INDEMNITY PROVISION

37. John Zink is obligated to indemnify Alyeska under the terms and conditions of the flare tip Purchase Order from and against any and all loss, liability, cost, or expense, and any and all claims by or liability to any third party for loss, damage or injury to persons or property which is based on or in any manner arises out of John Zink's performance or nonperformance of the Purchase Order to the extent that any loss, damage, or injury results from John Zink's negligence.

38. John Zink was negligent by designing and providing a flare tip with an air diffuser attached by bolts with single nuts.

COMPLAINT
*Alyeska Pipeline Service Company v. John Zink Company, LLC*
4814-6859-0979y.4 0112378-000001

Davis Wright Tremaine LLP
LAW OFFICES
188 West Northern Lights Blvd., Ste. 1100
Anchorage, Alaska 99503-3985
(907) 257-5300 · Fax: (907) 257-5399

39. As a result of John Zink's negligence, Alyeska incurred costs of at least $1,188,973.44 to third-party contractors and suppliers to repair the flare tip.

40. Despite demand, John Zink has refused to reimburse Alyeska for its losses, liabilities, costs, or expenses caused by John Zink's negligence.

41. By refusing to reimburse Alyeska's costs incurred as a result of John Zink's negligence, John Zink is in breach of the indemnity provisions of the flare tip Purchase Order.

42. Alyeska has been damaged by John Zink's breach of its indemnity obligations in the amount of at least $1,188,973.44 with the exact amount to be proved at trial.

43. John Zink is liable to Alyeska for Alyeska's damages resulting from John Zink's breach of its indemnity obligations.

## V. THIRD CAUSE OF ACTION—VIOLATION OF ALASKA'S UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT ("UTPA")

44. The UTPA makes unlawful "unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce."

45. Specifically, while the UTPA does not limit the kinds of unfair and deceptive acts that are prohibited, the act prohibits the following practices:

> (4) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;

COMPLAINT
*Alyeska Pipeline Service Company v. John Zink Company, LLC*
4814-6859-0979v.4 0112378-000001

3AN-19-05545 CI
Page 9

EXHIBIT A

...

(6) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

...

(11) engaging in any other conduct creating a likelihood of confusion or of misunderstanding and that misleads, deceives, or damages a buyer or a competitor in connection with the sale or advertisement of goods or services;

(12) using or employing deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression, or omission in connection with the sale or advertisement of goods or services whether or not a person has in fact been misled, deceived, or damaged[.]

46. By selling the flare tip to Alyeska, John Zink was conducting trade or commerce.

47. John Zink represented to Alyeska that the flare tip it sold to Alyeska was of good workmanship and quality, and John Zink warrantied its product.

48. John Zink violated the UTPA by providing a flare tip that was not of the standard, quality, or grade represented.

49. John Zink further violated the UTPA by construing the direct costs of repair covered by the product warranty so narrowly as to exclude any recovery by Alyeska under the warranty for all costs Alyeska incurred to repair the defective flare tip.

Davis Wright Tremaine LLP
LAW OFFICES
188 West Northern Lights Blvd., Ste. 1100
Anchorage, Alaska 99503-3983
(907) 257-5300 · Fax: (907) 257-5399

50.     By applying the warranty in such a way that Alyeska's costs of repair—costs incurred with oversight and knowledge of John Zink—exceed the costs of the product in the first instance, John Zink has acted unfairly and deceptively in the conduct of trade or commerce.

51.     Alyeska was damaged by John Zink's unfair and deceptive conduct in the amount of at least $1,188,973.44 with the exact amount to be proved at trial.

52.     John Zink is liable to Alyeska under the UTPA for Alyeska's damages, triple damages under the UTPA, and Alyeska's full attorneys' fees in bringing this action.

## VI.     PRAYER FOR RELIEF

WHEREFORE, Alyeska prays for relief as follows:

A.     For judgment against John Zink and in favor of Alyeska in the full amount of all damages sustained by Alyeska as a result of John Zink's breaches of contract and violations of the UTPA;

B.     For an award of triple damages under the UTPA;

C.     For an award of attorneys' fees and costs, including full attorneys' fees under the UTPA;

D.     For prejudgment interest at the highest rate allowed by law; and

E.     For such other and further relief as this court deems just and equitable.

Davis Wright Tremaine LLP
LAW OFFICES
188 West Northern Lights Blvd., Ste. 1100
Anchorage, Alaska 99503-3983
(907) 257-5300 · Fax: (907) 257-5399

DATED this 8th day of March, 2019.

Davis Wright Tremaine LLP
Attorneys for Plaintiff Alyeska Pipeline Service
Company

By _____
Scott Broadwell, ABA No. 0611069
Anne Marie Tavella, ABA No. 1506045

Davis Wright Tremaine LLP
LAW OFFICES
188 West Northern Lights Blvd., Ste. 1100
Anchorage, Alaska 99503-3985
(907) 257-5300 · Fax: (907) 257-5399

COMPLAINT
*Alyeska Pipeline Service Company v. John Zink Company, LLC*
4814-6859-0979v.4 0112378-000001

3AN-19-05545 CI
Page 12



## PURCHASE ORDER

**Supplier Details**
JOHN ZINK COMPANY, LLC
11920 EAST APACHE
TULSA
OK
74116
United States
Supplier Contact Name: Josh Kimrey

Phone:
Fax:
Email:

| Purchase Order No | 16314381 |
|---|---|
| Revision | 0 |
| PO Issue Date | 05-MAY-2016 |
| Revision Date | - |
| Buyer Contact Name | Daniels,Natalie |
| Buyer Telephone | 907-787-8310 |
| Buyer Email | Natalie.Daniels@alyeska-pipeline.com |
| Reference Document | |

Invoice direct to: _AccountsPayable@Alyeska-Pipeline.com_, or Fax Invoice to: 907-762-2603, or Mail Invoice USPS to:
Alyeska Pipeline Service Company, Attn: Accounts Payable, P. O. Box 196606, Anchorage AK 99519-6606

| Payment Terms | Transit Type | Carrier Name | FOB Point | FOB Code |
|---|---|---|---|---|
| Net 30 | See Below | To Be Arranged | TULSA, OK | Freight Collect |

| | |
|---|---|
| **Primary Ship To Location:** | Alyeska Central Warehouse<br>Alyeska Pipeline Service Co.<br>709 Bidwill Avenue<br><br>Fairbanks, AK 99701<br>United States |
| **Special Instructions / Notes to Supplier:** | THIS PURCHASE ORDER DATED 5/5/16 IS ISSUED TO REPLACE THE ORIGINAL PO #16312482 DATED 3/15/16 FOR THE SOLE PURPOSE OF ESTABLISHING A NEW VENDOR NUMBER TO CORRECT SUPPLIER PROFILE IN ALYESKA'S INTERNAL ENTERPRISE BUSINESS SYSTEM. IN ADDITION, REFERENCE TO UCC-1 REQUIREMENT HAS BEEN DELETED. THIS REQUIREMENT HAS BEEN SUPERSEEDED BY KOCH CHEMICAL TECHNOLOGY GROUP, LLC CORPORATE GUARANTEE DATED 4/22/16. ALL OTHER TERMS AND CONDITIONS OF ORIGINAL PO REMAIN UNCHANGED.<br><br>ORIGINAL PO FOLLOWED WRITTEN QUOTATION BY JOSH KIMREY ON JOHN ZINK COMPANY LLC QUOTE #15-S1349, REV 7 DATED 3/10/16 AND CLARIFICATION EMAILS DATED 3/14/16 AND 3/15/16 FROM JOSH.KIMREY@JOHNZINK.COM 918-234-5702.<br><br>BY SHIPPING THE GOODS SPECIFIED HERIN, OR ACKNOWLEDGING RECEIPT OF THIS ORDER, SELLER AGREES TO THOSE NEGOTIATED TERMS AND CONDITIONS BETWEEN ALYESKA PIPELINE AND JOHN ZINK COMPANY LLC INCLUDED HERIN OR ATTACHED HERETO AS WELL AS THOSE SET FORTH ON THE FACE OF THIS ORDER. PURCHASER HEREBY OBJECTS TO ANY DIFFERENT OR ADDITIONAL TERMS CONTAINED IN THE SELLERS ACCEPTANCE OF THIS ORDER.<br><br>ADDITIONS OR REVISIONS TO SPECIFICATIONS SHALL NOT BE MADE WITHOUT PRIOR WRITTEN AUTHORIZATION FROM ALYESKA BUYER.<br><br>PROCUREMENT SPECIFICATION: PROJECT G014-HSP1/REV1 - PS01 FLARE TIP AND ASSOCIATED COMPONETS.<br><br>ALYESKA MASTER SPECIFICATION G540 - PACKAGING, CRATING AND SHIPPING GUIDELINES.<br><br>SUBMITTAL DATA REQUIRED PER PROJECT SPEC G014-HSP1/REV1 MUST BE SUBMITTED DIRECTLY TO THE RESPONSIBLE ENGINEER FOR APPROVAL PRIOR TO START OF FABRICATION. ALL COMMUNICATION MUST BE COPIED TO THE BUYER.<br>PROJECT ENGINEER: THOMAS MARCHESANI Thomas.Marchesani@alyeska-pipeline.com<br><br>SUPPLIER MUST PROVIDE FABRICATION SCHEDULE WITHIN 1 WEEK OF APPROVED PURCHASE ORDER TO ALYESKA BUYER.<br><br>ALL PROGRESS PAYMENT INVOICES MUST INCLUDE THE APPROPRIATE DOCUMENTATION TO VERIFY EACH MILESTONE PAYMENT REQUEST.<br><br>EXPEDITED DELIVERY REFERENCED ON THE PURCHASE ORDER LINE ITEM #7 PER THE AGREEMENT IS PRORATED ON A DAILY BASIS NOT TO EXCEED $155,500.00. THE EXPEDITED DELIVERY EXPIRES ON AUGUST 16, 2016.<br><br>VENDOR IS REQUESTED TO NOTIFY BUYER IN THE EVENT THAT THE SHIP DATE LISTED ON THE PURCHASE ORDER CHANGES. |

EXHIBIT A, Page 1 of 8

SHIPPING TO BE DETERMINED BY ALYESKA PIPELINE.
-
IT SHALL BE THE VENDORS RESPONSIBILITY TO ENSURE THAT MATERIALS LISTED ARE
PROPERLY PACKAGED AND PROTECTED FOR RECEIVING AND INSPECTION AT APSC FACILITY.
-
P.O. NUMBER MUST BE SHOWN ON ALL SHIPPING DOCUMENTS, INVOICES AND ANY
CORRESPONDENCE RELATING TO THIS ORDER.
-
VENDOR SHALL ACKNOWLEDGE RECEIPT AND ACCEPTANCE OF THIS PURCHASE ORDER
BY COMPLETING AND RETURNING THE ATTACHED ACKNOWLEDGMENT FORM TO:
NATALIE DANIELS Natalie.Daniels@alyeska-pipeline.com OR FAX: 907.787.6730

| Line | Part Number/Description | Supplier Ship Date | Quantity | UOM | Unit Price (USD) | Amount (USD) |
|------|------------------------|--------------------|----------|-----|------------------|--------------|
| 1 | Item Number (CID): 255006 | 16-AUG-2016 | 1 | Assembly | 0.00 | 0.00 |
| | Item Short Description: FLARE,ASSEMBLY | Ship To Location: Alyeska Central Warehouse Alyeska Pipeline Service Co. 709 Bidwill Avenue Fairbanks, AK 99701 United States | | | | |
| | Item Long Description: TO REPLACE MODEL FAB/F 48" AIROIL-FLAREGAS FLARE TIP ASSEMBLY. REPLACED DRAWING NUMBER AA37671. NEW OR UPDATED DRAWING SUBMITTAL REQUIRED FOR PURCHASE ORDER COMPLETION. | Notes: | | | | |
| | Model: Part#:FABRICATED BASED ON DWG AA37671 Manufacturer:JOHNZINK | | | | | |
| 2 | Item Short Description: Process Engineering | | 1 | Each | 3,500.00 | 3,500.00 |
| | | Ship To Location: Alyeska Central Warehouse Alyeska Pipeline Service Co. 709 Bidwill Avenue Fairbanks, AK 99701 United States | | | | |
| | Item Long Description: | Notes: | | | | |
| 3 | Item Short Description: Payment Progress, 30% Invoiced on Issuance or Drawings for Approval | | 1 | Each | 233,040.00 | 233,040.00 |
| | | Ship To Location: Alyeska Central Warehouse Alyeska Pipeline Service Co. 709 Bidwill Avenue Fairbanks, AK 99701 United States | | | | |
| | Item Long Description: | Notes: | | | | |
| 4 | Item Short Description: Payment Progress, 40% Invoiced on Receipt of the Major Alloy 800 Plate and Document Submittal of that Material Being Allocated to Project | | 1 | Each | 310,720.00 | 310,720.00 |
| | | Ship To Location: Alyeska Central Warehouse Alyeska Pipeline Service Co. 709 Bidwill Avenue Fairbanks, AK 99701 United States | | | | |
| | Item Long Description: | Notes: | | | | |
| 5 | Item Short Description: Payment Progress, 25% Invoiced Upon Notification of Readiness to Ship | | 1 | Each | 194,200.00 | 194,200.00 |
| | | Ship To Location: Alyeska Central Warehouse Alyeska Pipeline Service Co. 709 Bidwill Avenue Fairbanks, AK 99701 United States | | | | |
| | Item Long Description: | Notes: | | | | |
| 6 | Item Short Description: Payment, 5% Invoiced Upon Receipt and Acceptance of all Submittal Requirements by Alyeska Pipeline | | 1 | Each | 38,840.00 | 38,840.00 |
| | | Ship To Location: Alyeska Central Warehouse Alyeska Pipeline Service Co. 709 Bidwill Avenue Fairbanks, AK 99701 United States | | | | |
| | Item Long Description: | Notes: | | | | |
| 7 | Item Short Description: Expedited Delivery, Pro-Rated 18-22 Weeks | 19-JUL-2016 | 155500 | Each | 1.00 | 155,500.00 |
| | | Ship To Location: Alyeska Central Warehouse Alyeska Pipeline Service Co. 709 Bidwill | | | | |

EXHIBIT A, Page 2 of 8

| Line | Part Number/Description | Supplier Ship Date | Quantity | UOM | Unit Price (USD) | Amount (USD) |
|------|-------------------------|--------------------|----------|-----|------------------|--------------|
|      | Item Long Description:  | Avenue Fairbanks, AK 99701 United States |  |  |  |  |
|      |                         | Notes:             |          |     |                  |              |

**Purchase Order Total Amount: $935,800.00**

**ALYESKA PIPELINE SERVICE COMPANY**
ACTING as AGENT for and on behalf of the
OWNERS of the Trans-Alaska Pipeline System
(TAPS)

SUPPLIER ACCEPTED AND AGREED TO

Print Name: _Josh Kimrey_

By: _John Zink Co LLC_   _05/10/2016_
    (Supplier)        (Date)

By: _____   _____
    (Agent)        (Date)



## COMPREHENSIVE PO TERMS AND CONDITIONS

1. **Offer and Acceptance:** This Purchase Order, including any attachments ("PO") is an offer to purchase and may be accepted by Seller either in writing or by conduct which recognizes the existence or formation of a contract including, without limitation, the delivery of any goods to Buyer. Any such acceptance is limited to the express terms of this PO. Buyer hereby objects to and rejects any proposal for additional or different terms or any attempt by Seller to vary any of the terms of this PO, and any such additional or different terms or variances shall be deemed material. Any such proposal or attempt by Seller that would materially change the description, quantity, price or delivery schedule of the goods shall constitute a rejection of this offer. Any other such proposal or attempt shall not operate as a rejection, but this offer shall be deemed accepted by Seller without regard thereto.

2. **Description and Quality of Goods:** All specifications, drawings and descriptions set forth or referred to herein and (to the extent not inconsistent with such specifications, drawings and descriptions) all statements and representations made by Seller regarding the quality or properties of the goods purchased are a part of this PO, and Seller shall furnish the goods in strict accordance therewith. No changes in Buyer's design, drawings or specifications or in the quality, quantity or nature of the goods shall be made unless authorized by Buyer's authorized representative in a written amendment to this PO accepted by Seller. If Seller notes any inconsistency or inaccuracy in information furnished by Buyer or if Seller believes purchaser's design should be modified, Seller shall notify Buyer in writing. No review or approval by Buyer of Seller's design, specifications, drawings, test procedures, practices or methods shall relieve Seller from any of its obligations under this PO.

3. **Warranties:** (a) Seller expressly warrants that it shall deliver good and marketable title to all goods furnished pursuant to this PO ("Products") free from defects, liens and encumbrances; (b) Seller warrants that the Products (1) will be of good quality and workmanship and free from all defects (latent or patent); (2) will conform to all specifications, drawings, descriptions and statements of work furnished specified or agreed to in the PO; (3) will conform to any samples and to any statements made on the containers, labels, sales literature or advertisements for such Products; and (4) will be adequately contained, packaged, marked and labeled. (c) These warranties shall be in effect for the period of the earlier of 24 months after the date that the Products are available for shipment or 12 months after startup of the Products. If during the warranty period any goods prove upon examination by Buyer not to meet the warranties set forth above, Seller will repair the Products or supply identical or substantially similar replacement Products EX Works Seller's manufacturing facility, as determined through mutual agreement between Seller and Buyer at the time. Any replacement Products will be warranted for the unexpired portion of the warranty period applicable to the particular Products or eight (8) months, whichever is longer, but in no event will the extended warranty period exceed eight (8) months after the expiration of the original warranty period. (d) Seller will not be responsible for the costs of removal, installation, re-installation or making of access of any goods or items, where such removal, installation, re-installation or making of access is required to repair or replace any defective Products. Furthermore, Seller will not be responsible for and assumes no liability for materials or workmanship, labor costs or other related expenses for any work performed by third parties in the repair or replacement of defective Products. (e) The warranties set forth in this Agreement will be voided if the Products have not been stored, installed, maintained or operated in accordance with accepted industrial practice or any specific instructions provided by Seller. (f) ALL WARRANTIES OR REPRESENTATIONS NOT SPECIFICALLY INCLUDED IN THIS PO, INCLUDING THOSE WITH RESPECT TO MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE WHETHER EXPRESSED, IMPLIED, STATUTORY OR ARISING FROM A COURSE OF DEALING, USAGE OF THE TRADE OR OTHERWISE WITH RESPECT TO ANY PRODUCTS ARE EXPRESSLY EXCLUDED. BUYER'S REMEDIES FOR BREACH OF WARRANTY ARE SPECIFICALLY LIMITED TO THE REPAIR OR REPLACEMENT OF THE PRODUCTS AND ARE EXCLUSIVE OF ALL OTHER REMEDIES. Seller's obligations under these warranties shall survive and be unaffected by any inspection, testing, acceptance, payment and/or use. In the event of Seller's failure to repair or replace such nonconforming Product within a reasonable time given the totality of the circumstances, Buyer, after reasonable notice to Seller, may repair or replace such Product and charge Seller for all costs reasonably incurred by Buyer in doing so.

*Do= 3/11/16*



4. **Quality:** Seller warrants that it has a Quality Assurance Program that provides for the quality of the Products furnish under this PO.

5. **Indemnification:** Seller shall indemnify, defend and hold harmless Buyer from and against any and all loss, liability, cost or expense, and any and all claims by or liability to any third party for loss, damage or injury to persons or property which is based on or in any manner arises out of Seller's performance or nonperformance of this PO, but only to the extent that any loss, damage, or injury resulted from the negligence or willful misconduct of Seller.

6. **Infringement of Third Party Rights:** Seller agrees to defend, indemnify and hold harmless Buyer against any and all loss, liability, costs or expenses, and any and all claims by or liability to any third party for loss, damage or injury arising out of any actual or alleged infringement of any United States or foreign patent, trademark, copyright or other intellectual property right arising from the sale or use of any Product supplied by Seller under this PO. In case any Product or any part or use thereof, is held to constitute an infringement, Seller shall, at its own expense, either procure for Buyer the right to continue using such Product or part or replace the same with a substantially equal but non-infringing Product meeting the requirements of this PO. Seller's obligations under this Article 6 shall not apply to any liability for infringement (i) of any method patent where the Products are used with other apparatus for carrying out a process resulting in a combination of steps which is deemed to infringe a method patent or patent directed to a combination of steps, (ii) where the Products are modified by Buyer, (iii) where the Products are used by Buyer in a manner different than the use communicated to and understood by Seller at the time the Products were sold to Buyer and such use constitutes infringement, or (iv) with respect to claims of infringement where the Products were designed and manufactured in accordance with the design or specifications furnished or required by Buyer.

7. **Inspection, Testing and Acceptance or Rejection.** All Products shall be subject to Buyer's inspection. If Buyer intends to carry out inspections or testing of the Products prior to shipping and/or during their manufacture, this PO will so state. If any inspection or test is made on Seller's premises, Seller, without additional charge, shall provide all reasonable facilities and assistance for the safety and convenience of Buyer's inspectors. Such inspections and tests shall be performed in such a manner as to not unduly delay the work. Buyer shall include instructions in the specifications for Seller to notify Buyer in advance of readiness for any test or step in the inspection process. Seller shall give Buyer the PO number, the location of Seller's plant and whether all or part of the Product is ready for inspection. All work shall be prepared so as to permit complete inspection for conformity to this PO and any applicable specifications. Neither the opportunity to inspect, nor the conducting of any inspection and/or testing shall be deemed to constitute acceptance of Products by Buyer or to relieve Seller from its own testing, inspection and quality control obligations. Buyer shall have the right to inspect and function test the Products within thirty (30) days from installation of Products at Pump Station 1, notwithstanding any prior inspection or testing by Buyer. All defective or nonconforming Products may be rejected by Buyer without prejudice to any other rights Buyer may have by reason of such defects or nonconformity, provided that if Buyer fails to perform a function test and/or reject the Products within nine (9) months after the date the Products are available for shipment, the Products shall be deemed accepted. Thereafter, claims for non-conforming Products shall be subject exclusively to the warranty provisions in paragraph 3.

8. **Time of Performance and Delivery.** Time is of the utmost importance in the performance of this PO by Seller. Seller shall inform Buyer immediately whenever it has reason to believe that circumstances within or beyond its control are likely to delay or prevent Seller's timely performance under this PO. Notwithstanding anything to the contrary contained in this PO, in the event that delivery of the Products is delayed for reasons attributable to Seller, Seller will pay to Buyer liquidated damages (as a genuine pre-estimate of loss and not as a penalty) of 0.5% per day of the total price of the PO (not including any bonus value) up to a maximum of 5% of the total PO price. Such daily liquidated damages shall be paid by Seller for each day past 22 weeks from the date of execution of this PO that Product is not ready for shipment. Buyer shall not impose liquidated damages if delivery is complete except for minor items which have no adverse impact on the installation schedule of the equipment, or if the Buyer suffers no demonstrable financial loss, in form of liquidated damages, as the result of the Seller's delayed delivery. Payment of liquidated damages shall be Buyer's sole remedy for delay until the maximum amount of liquidated damages is reached.

*JE   3/1/16*



9. **Termination:** Buyer shall have the right to terminate this PO or any part at any time with or without cause by written notice to Seller. (a) With Cause; Buyer may terminate all or part of this PO with cause by written notice to Seller under the following circumstances: (i) Seller fails to make any delivery in accordance with the agreed delivery date or schedule or otherwise breaches or fails to comply with any other material obligation under the PO and fails to commence to cure such breach within five (5) business days after receipt of notice of same from Buyer; (ii) Seller fails to make timely progress in the production of the Products so as to create reasonable grounds for Buyer's insecurity with respect to Seller's performance of its obligation under this PO; (iii) Seller becomes insolvent; (iv) any proceeding in bankruptcy, reorganization or for the appointment of a receiver or trustee is filed by or against Seller; or (v) Seller makes an assignment for the benefit of its creditors. In the event of termination for cause, Buyer may purchase or otherwise acquire the Products elsewhere on such terms or in such manner as Buyer may deem appropriate and Seller shall be liable to Buyer for any excess costs or other expenses reasonably incurred by Buyer. Buyer will make good faith efforts to mitigate its damages. Buyer shall have no obligation for costs relating to any Products not delivered to Buyer before notice of termination is given to Seller, and title to same shall remain with Seller. Buyer's exercise of the rights described above shall be without prejudice to any other rights or remedies it may have. Any waiver by Buyer of any breach or default by Seller shall not constitute a continuing waiver or a waiver of any other breach or default. (b) Without Cause: Buyer may, at any time, terminate this PO without cause by giving written notice of termination to Seller. In the event of such termination, Seller shall immediately stop work under this PO and immediately cause its suppliers and subcontractors to cease such work. Seller shall be entitled to (a) reimbursement for any reasonable non-recoverable direct costs for labor and materials incurred in the performance of this PO prior to its termination, (b) along with those costs which arose out of or resulted from the cancellation, such as terminating orders with suppliers, plus (c) a termination fee equal to twenty-five percent (25%) of the PO price. In no event shall Seller be entitled to reimbursement for costs incurred by Seller for work performed after its receipt of the termination notice or costs incurred by Seller, Seller's suppliers or subcontractors which could have reasonably been avoided. The value of any material paid for by Buyer but left in the hands of Seller shall be taken into account in calculating the amounts due to Seller. In the case of termination by Buyer of all or part of this PO without cause, any claim by Seller for such termination must be submitted to Buyer in writing no later than ninety (90) days after Seller's receipt of such termination notice. Seller waives any claim for reimbursement of the costs provided for herein if Seller fails to notify Buyer in writing of such claim within ninety (90) days after Seller's receipt of notice of termination.

10. **Assignment:** Seller shall not, without Buyer's prior written consent, which Buyer shall not unreasonably withhold (a) assign this PO or any right or interest therein; or (b) delegate any obligation that it owes to Buyer under this PO. Any attempted assignment or delegation shall be void and ineffective for all purposes unless made in conformity with this paragraph.

11. **Title and Risk of Loss:** All Products shall be suitably prepared and packed for shipment in accordance with all instructions defined in this PO and shall be of a quality to insure safe delivery. All packaging, boxing and shipping charges shall be paid by Seller unless otherwise stated in this PO. All returnable packing or handling material debited to the Buyer's account must be clearly marked "Returnable." Goods delivered in error or in excess of this PO may be returned at Seller's expense and risk. Unless otherwise instructed, Seller shall ship Products in such a form that freight charges, whether based on cubic measurements or by weight, are limited to the minimum freight costs appropriate to the consignment. Seller shall confer with Buyer, prior to shipment, in selection of the mode of transportation and routing. Unless otherwise stated on the face of this PO, title to the Products shall pass to Buyer upon delivery of the conforming Products to the F.O.B. point specified in the PO. Seller assumes all risk of loss to the Products prior to such delivery.

12. **Confidentiality:** (a) Information, drawings, data, design, inventions, software, ideas, suggestions and other information supplied by Buyer shall be Buyer's property and shall be held in confidence by Seller. Such information shall not be reproduced, used, modified or disclosed to others by Seller without Buyer's prior written consent and shall be returned to Buyer upon Buyer's demand. Seller's obligation of confidentiality shall not apply to information which: (i) at the time of or after the disclosure thereof by Buyer to Seller becomes, through no act or omission of Seller, part of the public domain; (ii) at the time of the disclosure thereof by Buyer to Seller was already in the

*J∞ 3/11/16*



possession of the Seller; (iii) corresponds in substance to that furnished to Seller by others than Buyer as a matter of right without restrictions of disclosure; (iv) was disclosed by Seller after a period of ten (10) years from date of its receipt by Seller; or (v) was developed by Seller independent of the information in question.

(b) Seller retains all intellectual property rights, whether registered or un-registered, including trademarks, patents, and copyright of all documents, drawing rights, design rights, developed programs, software, models and other data provided or developed in the course of the PO ("Seller IP"), and hereby grants Buyer a non-exclusive, non-assignable royalty free irrevocable license to use Seller IP delivered to Buyer or embodied in the Products or related deliverables only for the purposes of Buyer's installation, operation and maintenance the Products. Buyer shall hold Seller's IP in strictest confidence and not disclose it to others except where such information at the time of or after the disclosure thereof by Seller to Buyer becomes public through no act or omission of Buyer or Buyer is obligated by law to disclose such information to federal or state agencies.

13. **Payment:** Unless otherwise stated in this PO, payment will be due thirty (30) days after the Products and all documentation required by this PO are received and accepted by Buyer. All claims for money due or to become due from Buyer shall be subject to deduction or set-off by Buyer by reason of any claim or liability arising from this PO.

14. **Notification of Recalls, Technical Service Bulletins and Upgrades:** Seller shall notify Buyer within two (2) business days of receipt by Seller of any of the following: (a)Any notice of a voluntary or involuntary recall of any defective or potentially defective Good or Product containing or incorporating such Good, including but not limited to a recall by a regulatory agency or in accordance with applicable laws or regulations; (b) Any software or firmware change or upgrade related to any Good or Product furnished in conjunction with this PO, including but not limited to an upgrade or change required in accordance with applicable laws or regulations; and (c)Any technical service bulletins or similar recommended procedures applicable to any Good or Product provided under this PO. Notification as required herein shall be made to the following central repository for Buyer: tech_bulletins@alyeska-pipeline.com.

15. **Access:** Buyer shall have access to Seller's premises and where applicable, to subcontractor's premises, at any reasonable time for the purpose of ascertaining the progress of work under this PO.

16. **Compliance with Laws:** Seller shall comply with all applicable laws, executive orders and regulations including but not limited to laws concerning non-discrimination in employment, including 43 CFR Part 27, implementing Section 403, public law 93-153 (1973), OSHA, Hazardous Materials Transportation Act, Toxic Substances Control Act and the Consumer Product Safety Act. In the event that this PO is considered a federal subcontract under the OFCCP regulations, and thus, subject to those regulations, Seller represents that it is a supplier of commercial items (as defined in FAR 52.244-6) which are sold on a fixed price basis in a competitive market.

17. **Applicable Law:** This PO and the relationship of the parties shall be governed by and interpreted in accordance with the laws of the State of Alaska, without regard to its conflicts of law rules. Any litigation arising out of or relating to this PO shall be brought only in a court of competent jurisdiction in Anchorage, Alaska.

18. **Remedies Cumulative:** Except where a specific remedy is expressly set forth as exclusive herein, the rights and remedies available to Buyer under this PO are in addition to and not in limitation of the rights and remedies otherwise available at law or in equity.

19. **Additional Terms:** If this PO involves an international contract for the sale of Goods, the source of definitions for commercial delivery terms shall be the 2010 Incoterms. The invalidity or unenforceability of any provision of the Agreement shall not affect the validity or enforceability of its other provisions and the remaining provisions shall remain in full force and effect.

20. **Changes:** Buyer shall have the right to require additional work, issue additional instructions, or make changes by written direction to Seller in any one or more of the following: (a) drawings, designs, or specifications; (b) method of shipment or packaging; (c) delivery schedule; and (d) quantities. If any such change results in a change in Seller's cost of performance or in the time of performance, an adjustment in price and time for performance will be made by the

$\int_{\mathcal{O}} = 3/11/16$



parties in writing; provided, however, that Seller shall notify Buyer of the request for such adjustment within fifteen (15) days after receipt by Seller of the notice of such change. Seller's writing shall detail the reasons for the price adjustment to the Buyer. Seller agrees not to make any changes that affect this PO without the prior written approval of the Buyer's authorized representative.

21. **Buyer's Property:** All property used by Seller in connection with this PO which is owned, supplied, charged to or paid for by Buyer shall be and remain the property of Buyer and shall be subject to removal and inspection by Buyer at any time. Seller shall (a) identify and mark all such property as Buyer's property; (b) use such property only to perform its obligation under this PO; (c) maintain, insure, and preserve such property in accordance with Buyer's directions; and (d) returned to Buyer when this PO has been completed or terminated.

22. **Price and Taxes:** The price specified herein does not include any taxes or duties of any kind that Seller is required to pay with respect to the Products, including any charges associated with obtaining necessary import/export licenses.

23. **Excusable Delays:** Neither party shall be liable for any delay in or failure of delivery or acceptance or any other impairment of its performance under this PO, in whole or in part, caused by the occurrence of any contingency beyond its control, including without limitation, war, riot, or governmental action.

24. **Survival of Obligations:** The obligations set forth in paragraphs 3, 5, 6, 7, 9, 12, 17, and 25 of this PO shall survive completion or termination of this PO.

25. **Limitation on Liability:** NO PARTY SHALL BE LIABLE FOR INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES, INCLUDING LOSS OF PROFITS, REVENUES, OR OTHER ECONOMIC LOSSES WHETHER DEEMED DIRECT OR CONSEQUENTIAL, ARISING UNDER ANY CAUSE OR COMBINATION OF CAUSES, INCLUDING ANY THEORIES OF CONCURRENT OR JOINT LIABILITY. IN NO EVENT WILL THE CUMULATIVE LIABILITY OF SELLER AND ITS AFFILIATES BE IN EXCESS OF ONE HUNDRED FIFTY PERCENT (150%) OF THE PO PRICE, REGARDLESS OF CAUSE OR ANY COMBINATION OF CAUSES WHATSOEVER. ALL INSURANCE PROCEEDS WHICH MAY BE PAID BY THE INSURERS OF SELLER OR ITS AFFILIATES WILL BE CREDITED AGAINST THE LIMITATION STATED ABOVE AND SHALL REDUCE THE AMOUNT OF THE CUMULATIVE LIABILITY OF SELLER AND ITS AFFILIATES. THESE LIMITATIONS SHALL APPLY NOTWITHSTANDING ANY FUNDAMENTAL BREACH OR FAILURE OF ESSENTIAL PURPOSE OF ANY LIMITED REMEDY.

26. **Entire Agreement:** This PO constitutes the complete and exclusive statement of the terms of the agreement between Buyer and Seller with respect to the subject matter and supersedes all prior oral or written agreements, commitments or understandings with respect to such subject matter. No modification of this PO shall be binding upon Buyer or Seller unless in writing and signed by Buyer's and Seller's authorized representatives.

*Jim C. Frankli 3/11/16*

## PURCHASE ORDER



**Supplier Details**
JOHN ZINK COMPANY, LLC
11920 EAST APACHE
TULSA
OK
74116
United States
**Supplier Contact Name:** Josh Kimrey

Phone:
Fax:
Email:

| Purchase Order No | 16314381 |
|---|---|
| Revision | 1 |
| PO Issue Date | 17-MAY-2016 |
| Revision Date | 17-MAY-2016 |
| Buyer Contact Name | Daniels,Natalie |
| Buyer Telephone | 907-787-8310 |
| Buyer Email | Natalie.Daniels@alyeska-pipeline.com |
| Reference Document | |

Invoice direct to: _AccountsPayable@Alyeska-Pipeline.com_, or Fax Invoice to: 907-762-2603, or Mail Invoice USPS to:
Alyeska Pipeline Service Company. Attn: Accounts Payable. P. O. Box 196606, Anchorage AK 99519-6606

| Payment Terms | Transit Type | Carrier Name | FOB Point | FOB Code |
|---|---|---|---|---|
| Net 30 | See Below | To Be Arranged | TULSA, OK | Freight Collect |
| **Primary Ship To Location:** | Alyeska Central Warehouse<br>Alyeska Pipeline Service Co.<br>709 Bidwill Avenue<br><br>Fairbanks, AK 99701<br>United States | | | |
| **Special Instructions / Notes to Supplier:** | REV001 ISSUED 5/17/16 TO JOHN ZINK COMPANY LLC FOR THE ADDITION OF LINE #8 THERMOCOUPLES ALL OTHER TERMS AND CONDITIONS OF ORIGINAL PURCHASE ORDER AND ANY PRECEDING CHANGE ORDERS SHALL REMAIN THE SAME.<br><br>THIS PURCHASE ORDER DATED 5/5/16 IS ISSUED TO REPLACE THE ORIGINAL PO #16312462 DATED 3/15/16 FOR THE SOLE PURPOSE OF ESTABLISHING A NEW VENDOR NUMBER TO CORRECT SUPPLIER PROFILE IN ALYESKA'S INTERNAL ENTERPRISE BUSINESS SYSTEM. IN ADDITION, REFERENCE TO UCC-1 REQUIREMENT HAS BEEN DELETED. THIS REQUIREMENT HAS BEEN SUPERSEEDED BY KOCH CHEMICAL TECHNOLOGY GROUP, LLC CORPORATE GUARANTEE DATED 4/22/16. ALL OTHER TERMS AND CONDITIONS OF ORIGINAL PO REMAIN UNCHANGED.<br><br>ORIGINAL PO FOLLOWED WRITTEN QUOTATION BY JOSH KIMREY ON JOHN ZINK COMPANY LLC QUOTE #16-S1349, REV 7 DATED 3/10/16 AND CLARIFICATION EMAILS DATED 3/14/16 AND 3/15/16 FROM JOSH.KIMREY@JOHNZINK.COM 918-234-5702.<br><br>BY SHIPPING THE GOODS SPECIFIED HERIN, OR ACKNOWLEDGING RECEIPT OF THIS ORDER, SELLER AGREES TO THOSE NEGOTIATED TERMS AND CONDITIONS BETWEEN ALYESKA PIPELINE AND JOHN ZINK COMPANY LLC INCLUDED HERIN OR ATTACHED HERETO AS WELL AS THOSE SET FORTH ON THE FACE OF THIS ORDER. PURCHASER HEREBY OBJECTS TO ANY DIFFERENT OR ADDITIONAL TERMS CONTAINED IN THE SELLERS ACCEPTANCE OF THIS ORDER.<br><br>ADDITIONS OR REVISIONS TO SPECIFICATIONS SHALL NOT BE MADE WITHOUT PRIOR WRITTEN AUTHORIZATION FROM ALYESKA BUYER.<br><br>PROCUREMENT SPECIFICATION: PROJECT G014-HSP1/REV1 - PS01 FLARE TIP AND ASSOCIATED COMPONETS.<br><br>ALYESKA MASTER SPECIFICATION G540 - PACKAGING, CRATING AND SHIPPING GUIDELINES.<br><br>SUBMITTAL DATA REQUIRED PER PROJECT SPEC G014-HSP1/REV1 MUST BE SUBMITTED DIRECTLY TO THE RESPONSIBLE ENGINEER FOR APPROVAL PRIOR TO START OF FABRICATION. ALL COMMUNICATION MUST BE COPIED TO THE BUYER.<br>PROJECT ENGINEER: THOMAS MARCHESANI Thomas.Marchesani@alyeska-pipeline.com<br><br>SUPPLIER MUST PROVIDE FABRICATION SCHEDULE WITHIN 1 WEEK OF APPROVED PURCHASE ORDER TO ALYESKA BUYER.<br><br>ALL PROGRESS PAYMENT INVOICES MUST INCLUDE THE APPROPRIATE DOCUMENTATION TO VERIFY EACH MILESTONE PAYMENT REQUEST.<br><br>EXPEDITED DELIVERY REFERENCED ON THE PURCHASE ORDER LINE ITEM #7 PER THE AGREEMENT IS PRORATED ON A DAILY BASIS NOT TO EXCEED $166,600.00. THE EXPEDITED DELIVERY EXPIRES ON AUGUST 16, 2016. |

EXHIBIT B, Page 1 of 8

**EXHIBIT A**

VENDOR IS REQUESTED TO NOTIFY BUYER IN THE EVENT THAT THE SHIP DATE LISTED ON THE PURCHASE ORDER CHANGES.

SHIPPING TO BE DETERMINED BY ALYESKA PIPELINE.

IT SHALL BE THE VENDORS RESPONSIBILITY TO ENSURE THAT MATERIALS LISTED ARE PROPERLY PACKAGED AND PROTECTED FOR RECEIVING AND INSPECTION AT APSC FACILITY.

P.O. NUMBER MUST BE SHOWN ON ALL SHIPPING DOCUMENTS, INVOICES AND ANY CORRESPONDENCE RELATING TO THIS ORDER.

VENDOR SHALL ACKNOWLEDGE RECEIPT AND ACCEPTANCE OF THIS PURCHASE ORDER BY COMPLETING AND RETURNING THE ATTACHED ACKNOWLEDGMENT FORM TO:
NATALIE DANIELS Natalie.Daniels@alyeska-pipeline.com OR FAX: 907.787.9730

| Line | Part Number/Description | Supplier Ship Date | Quantity | UOM | Unit Price (USD) | Amount (USD) |
|---|---|---|---|---|---|---|
| 1 | Item Number (CID): 255006<br><br>Item Short Description: FLARE,ASSEMBLY<br><br>Item Long Description: TO REPLACE MODEL FAB/F 48" AIROIL-FLAREGAS FLARE TIP ASSEMBLY. REPLACED DRAWING NUMBER AA37671. NEW OR UPDATED DRAWING SUBMITTAL REQUIRED FOR PURCHASE ORDER COMPLETION.<br><br>Model:<br>Part#:FABRICATED BASED ON DWG AA37671<br>Manufacturer:JOHNZINK | 16-AUG-2016 | 1 | Assembly | 0.00 | 0.00 |
| | | Ship To Location: Alyeska Central Warehouse Alyeska Pipeline Service Co. 709 Bidwill Avenue Fairbanks, AK 99701 United States<br><br>Notes: | | | | |
| 2 | Item Short Description: Process Engineering<br><br>Item Long Description: | | 1 | Each | 3,500.00 | 3,500.00 |
| | | Ship To Location: Alyeska Central Warehouse Alyeska Pipeline Service Co. 709 Bidwill Avenue Fairbanks, AK 99701 United States<br><br>Notes: | | | | |
| 3 | Item Short Description: Payment Progress, 30% Invoiced on Issuance or Drawings for Approval<br><br>Item Long Description: | | 1 | Each | 233,040.00 | 233,040.00 |
| | | Ship To Location: Alyeska Central Warehouse Alyeska Pipeline Service Co. 709 Bidwill Avenue Fairbanks, AK 99701 United States<br><br>Notes: | | | | |
| 4 | Item Short Description: Payment Progress, 40% Invoiced on Receipt of the Major Alloy 800 Plate and Document Submittal of that Material Being Allocated to Project<br><br>Item Long Description: | | 1 | Each | 310,720.00 | 310,720.00 |
| | | Ship To Location: Alyeska Central Warehouse Alyeska Pipeline Service Co. 709 Bidwill Avenue Fairbanks, AK 99701 United States<br><br>Notes: | | | | |
| 5 | Item Short Description: Payment Progress, 25% Invoiced Upon Notification of Readiness to Ship<br><br>Item Long Description: | | 1 | Each | 194,200.00 | 194,200.00 |
| | | Ship To Location: Alyeska Central Warehouse Alyeska Pipeline Service Co. 709 Bidwill Avenue Fairbanks, AK 99701 United States<br><br>Notes: | | | | |
| 6 | Item Short Description: Payment, 5% Invoiced Upon Receipt and Acceptance of all Submittal Requirements by Alyeska Pipeline<br><br>Item Long Description: | | 1 | Each | 38,840.00 | 38,840.00 |
| | | Ship To Location: Alyeska Central Warehouse Alyeska Pipeline Service Co. 709 Bidwill Avenue Fairbanks, AK 99701 United States<br><br>Notes: | | | | |

EXHIBIT B, Page 2 of 8

**EXHIBIT A**

| Line | Part Number/Description | Supplier Ship Date | Quantity | UOM | Unit Price (USD) | Amount (USD) |
|------|------------------------|--------------------|----------|-----|------------------|--------------|
| | | | | | | |
| 7 | Item Short Description: Expedited Delivery, Pro-Rated 18-22 Weeks <br><br> Item Long Description: | 19-JUL-2016 <br><br> Ship To Location: Alyeska Central Warehouse Alyeska Pipeline Service Co. 709 Bidwill Avenue Fairbanks AK 99701 United States <br><br> Notes: | 155500 | Each | 1.00 | 155,500.00 |
| 8 | Item Short Description: Thermocouple, Type K & Mounting Bracket Assembly - Matches Existing TC/Assembly <br><br> Item Long Description: | 16-AUG-2016 <br><br> Ship To Location: Alyeska Central Warehouse Alyeska Pipeline Service Co. 709 Bidwill Avenue Fairbanks, AK 99701 United States <br><br> Notes: | 3 | Each | 889.00 | 2,467.00 |

**Purchase Order Total Amount: $938,467.00**

SUPPLIER ACCEPTED AND AGREED TO

ALYESKA PIPELINE SERVICE COMPANY ACTING as AGENT for and on behalf of the OWNERS of the Trans-Alaska Pipeline System (TAPS)

Print Name: Jim Franklin

By: Jim Franklin    5/18/2016
   (Supplier)       (Date)

By: Chad Green    5/12/16
    (Agent)       (Date)

EXHIBIT B, Page 3 of 8



## COMPREHENSIVE PO TERMS AND CONDITIONS

1. **Offer and Acceptance:** This Purchase Order, including any attachments ("PO") is an offer to purchase and may be accepted by Seller either in writing or by conduct which recognizes the existence or formation of a contract including, without limitation, the delivery of any goods to Buyer. Any such acceptance is limited to the express terms of this PO. Buyer hereby objects to and rejects any proposal for additional or different terms or any attempt by Seller to vary any of the terms of this PO, and any such additional or different terms or variances shall be deemed material. Any such proposal or attempt by Seller that would materially change the description, quantity, price or delivery schedule of the goods shall constitute a rejection of this offer. Any other such proposal or attempt shall not operate as a rejection, but this offer shall be deemed accepted by Seller without regard thereto.

2. **Description and Quality of Goods:** All specifications, drawings and descriptions set forth or referred to herein and (to the extent not inconsistent with such specifications, drawings and descriptions) all statements and representations made by Seller regarding the quality or properties of the goods purchased are a part of this PO, and Seller shall furnish the goods in strict accordance therewith. No changes in Buyer's design, drawings or specifications or in the quality, quantity or nature of the goods shall be made unless authorized by Buyer's authorized representative in a written amendment to this PO accepted by Seller. If Seller notes any inconsistency or inaccuracy in information furnished by Buyer or if Seller believes purchaser's design should be modified, Seller shall notify Buyer in writing. No review or approval by Buyer of Seller's design, specifications, drawings, test procedures, practices or methods shall relieve Seller from any of its obligations under this PO.

3. **Warranties:** (a) Seller expressly warrants that it shall deliver good and marketable title to all goods furnished pursuant to this PO ("Products") free from defects, liens and encumbrances; (b) Seller warrants that the Products (1) will be of good quality and workmanship and free from all defects (latent or patent); (2) will conform to all specifications, drawings, descriptions and statements of work furnished specified or agreed to in the PO; (3) will conform to any samples and to any statements made on the containers, labels, sales literature or advertisements for such Products; and (4) will be adequately contained, packaged, marked and labeled. (c) These warranties shall be in effect for the period of the earlier of 24 months after the date that the Products are available for shipment or 12 months after startup of the Products. If during the warranty period any goods prove upon examination by Buyer not to meet the warranties set forth above, Seller will replace the Products or supply identical or substantially similar replacement Products EX Works Seller's manufacturing facility, as determined through mutual agreement between Seller and Buyer at the time. Any replacement Products will be warranted for the unexpired portion of the warranty period applicable to the particular Products or eight (8) months, whichever is longer, but in no event will the extended warranty period exceed eight (8) months after the expiration of the original warranty period. (d) Seller will not be responsible for the costs of removal, installation, re-installation or making of access of any goods or items, where such removal, installation, re-installation or making of access is required to repair or replace any defective Products. Furthermore, Seller will not be responsible for and assumes no liability for materials or workmanship, labor costs or other related expenses for any work performed by third parties in the repair or replacement of defective Products. (e) The warranties set forth in this Agreement will be voided if the Products have not been stored, installed, maintained or operated in accordance with accepted industrial practice or any specific instructions provided by Seller. (f) ALL WARRANTIES OR REPRESENTATIONS NOT SPECIFICALLY INCLUDED IN THIS PO, INCLUDING THOSE WITH RESPECT TO MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE WHETHER EXPRESSED, IMPLIED, STATUTORY OR ARISING FROM A COURSE OF DEALING, USAGE OF THE TRADE OR OTHERWISE WITH RESPECT TO ANY PRODUCTS ARE EXPRESSLY EXCLUDED. BUYER'S REMEDIES FOR BREACH OF WARRANTY ARE SPECIFICALLY LIMITED TO THE REPAIR OR REPLACEMENT OF THE PRODUCTS AND ARE EXCLUSIVE OF ALL OTHER REMEDIES. Seller's obligations under these warranties shall survive and be unaffected by any inspection, testing, acceptance, payment and/or use. In the event of Seller's failure to repair or replace such nonconforming Product within a reasonable time given the totality of the circumstances, Buyer, after reasonable notice to Seller, may repair or replace such Product and charge Seller for all costs reasonably incurred by Buyer in doing so.

Page 1 of 5

*PO = 3/11/16*



4. **Quality:** Seller warrants that it has a Quality Assurance Program that provides for the quality of the Products furnish under this PO.

5. **Indemnification:** Seller shall indemnify, defend and hold harmless Buyer from and against any and all loss, liability, cost or expense, and any and all claims by or liability to any third party for loss, damage or injury to persons or property which is based on or in any manner arises out of Seller's performance or nonperformance of this PO, but only to the extent that any loss, damage, or injury resulted from the negligence or willful misconduct of Seller.

6. **Infringement of Third Party Rights:** Seller agrees to defend, indemnify and hold harmless Buyer against any and all loss, liability, costs or expenses, and any and all claims by or liability to any third party for loss, damage or injury arising out of any actual or alleged infringement of any United States or foreign patent, trademark, copyright or other intellectual property right arising from the sale or use of any Product supplied by Seller under this PO. In case any Product or any part or use thereof, is held to constitute an infringement, Seller shall, at its own expense, either procure for Buyer the right to continue using such Product or part or replace the same with a substantially equal but non-infringing Product meeting the requirements of this PO. Seller's obligations under this Article 6 shall not apply to any liability for infringement (i) of any method patent where the Products are used with other apparatus for carrying out a process resulting in a combination of steps which is deemed to infringe a method patent or patent directed to a combination of steps, (ii) where the Products are modified by Buyer, (iii) where the Products are used by Buyer in a manner different than the use communicated to and understood by Seller at the time the Products were sold to Buyer and such use constitutes infringement, or (iv) with respect to claims of infringement where the Products were designed and manufactured in accordance with the design or specifications furnished or required by Buyer.

7. **Inspection, Testing and Acceptance or Rejection.** All Products shall be subject to Buyer's inspection. If Buyer intends to carry out inspections or testing of the Products prior to shipping and/or during their manufacture, this PO will so state. If any inspection or test is made on Seller's premises, Seller, without additional charge, shall provide all reasonable facilities and assistance for the safety and convenience of Buyer's inspectors. Such inspections and tests shall be performed in such a manner as to not unduly delay the work. Buyer shall include instructions in the specifications for Seller to notify Buyer in advance of readiness for any test or step in the inspection process. Seller shall give Buyer the PO number, the location of Seller's plant and whether all or part of the Product is ready for inspection. All work shall be prepared so as to permit complete inspection for conformity to this PO and any applicable specifications. Neither the opportunity to inspect, nor the conducting of any inspection and/or testing shall be deemed to constitute acceptance of Products by Buyer or to relieve Seller from its own testing, inspection and quality control obligations. Buyer shall have the right to inspect and function test the Products within thirty (30) days from installation of Products at Pump Station 1, notwithstanding any prior inspection or testing by Buyer. All defective or nonconforming Products may be rejected by Buyer without prejudice to any other rights Buyer may have by reason of such defects or nonconformity, provided that if Buyer fails to perform a function test and/or reject the Products within nine (9) months after the date the Products are available for shipment, the Products shall be deemed accepted. Thereafter, claims for non-conforming Products shall be subject exclusively to the warranty provisions in paragraph 3.

8. **Time of Performance and Delivery.** Time is of the utmost importance in the performance of this PO by Seller. Seller shall inform Buyer immediately whenever it has reason to believe that circumstances within or beyond its control are likely to delay or prevent Seller's timely performance under this PO. Notwithstanding anything to the contrary contained in this PO, in the event that delivery of the Products is delayed for reasons attributable to Seller, Seller will pay to Buyer liquidated damages (as a genuine pre-estimate of loss and not as a penalty) of 0.5% per day of the total price of the PO (not including any bonus value) up to a maximum of 5% of the total PO price. Such daily liquidated damages shall be paid by Seller for each day past 22 weeks from the date of execution of this PO that Product is not ready for shipment. Buyer shall not impose liquidated damages if delivery is complete except for minor items which have no adverse impact on the installation schedule of the equipment, or if the Buyer suffers no demonstrable financial loss, in form of liquidated damages, as the result of the Seller's delayed delivery. Payment of liquidated damages shall be Buyer's sole remedy for delay until the maximum amount of liquidated damages is reached.

*J✍ 3/11/16*



9. **Termination:** Buyer shall have the right to terminate this PO or any part at any time with or without cause by written notice to Seller. (a) With Cause: Buyer may terminate all or part of this PO with cause by written notice to Seller under the following circumstances: (i) Seller fails to make any delivery in accordance with the agreed delivery date or schedule or otherwise breaches or fails to comply with any other material obligation under the PO and fails to commence to cure such breach within five (5) business days after receipt of notice of same from Buyer; (ii) Seller fails to make timely progress in the production of the Products so as to create reasonable grounds for Buyer's insecurity with respect to Seller's performance of its obligation under this PO; (iii) Seller becomes insolvent; (iv) any proceeding in bankruptcy, reorganization or for the appointment of a receiver or trustee is filed by or against Seller; or (v) Seller makes an assignment for the benefit of its creditors. In the event of termination for cause, Buyer may purchase or otherwise acquire the Products elsewhere on such terms or in such manner as Buyer may deem appropriate and Seller shall be liable to Buyer for any excess costs or other expenses reasonably incurred by Buyer. Buyer will make good faith efforts to mitigate its damages. Buyer shall have no obligation for costs relating to any Products not delivered to Buyer before notice of termination is given to Seller, and title to same shall remain with Seller. Buyer's exercise of the rights described above shall be without prejudice to any other rights or remedies it may have. Any waiver by Buyer of any breach or default by Seller shall not constitute a continuing waiver or a waiver of any other breach or default. (b) Without Cause: Buyer may, at any time, terminate this PO without cause by giving written notice of termination to Seller. In the event of such termination, Seller shall immediately stop work under this PO and immediately cause its suppliers and subcontractors to cease such work. Seller shall be entitled to (a) reimbursement for any reasonable non-recoverable direct costs for labor and materials incurred in the performance of this PO prior to its termination, (b) along with those costs which arose out of or resulted from the cancellation, such as terminating orders with suppliers, plus (c) a termination fee equal to twenty-five percent (25%) of the PO price. In no event shall Seller be entitled to reimbursement for costs incurred by Seller for work performed after its receipt of the termination notice or costs incurred by Seller, Seller's suppliers or subcontractors which could have reasonably been avoided. The value of any material paid for by Buyer but left in the hands of Seller shall be taken into account in calculating the amounts due to Seller. In the case of termination by Buyer of all or part of this PO without cause, any claim by Seller for such termination must be submitted to Buyer in writing no later than ninety (90) days after Seller's receipt of such termination notice. Seller waives any claim for reimbursement of the costs provided for herein if Seller fails to notify Buyer in writing of such claim within ninety (90) days after Seller's receipt of notice of termination.

10. **Assignment:** Seller shall not, without Buyer's prior written consent, which Buyer shall not unreasonably withhold (a) assign this PO or any right or interest therein; or (b) delegate any obligation that it owes to Buyer under this PO. Any attempted assignment or delegation shall be void and ineffective for all purposes unless made in conformity with this paragraph.

11. **Title and Risk of Loss:** All Products shall be suitably prepared and packed for shipment in accordance with all instructions defined in this PO and shall be of a quality to insure safe delivery. All packaging, boxing and shipping charges shall be paid by Seller unless otherwise stated in this PO. All returnable packing or handling material debited to the Buyer's account must be clearly marked "Returnable." Goods delivered in error or in excess of this PO may be returned at Seller's expense and risk. Unless otherwise instructed, Seller shall ship Products in such a form that freight charges, whether based on cubic measurements or by weight, are limited to the minimum freight costs appropriate to the consignment. Seller shall confer with Buyer, prior to shipment, in selection of the mode of transportation and routing. Unless otherwise stated on the face of this PO, title to the Products shall pass to Buyer upon delivery of the conforming Products to the F.O.B. point specified in the PO. Seller assumes all risk of loss to the Products prior to such delivery.

12. **Confidentiality:** (a) Information, drawings, data, design, inventions, software, ideas, suggestions and other information supplied by Buyer shall be Buyer's property and shall be held in confidence by Seller. Such information shall not be reproduced, used, modified or disclosed to others by Seller without Buyer's prior written consent and shall be returned to Buyer upon Buyer's demand. Seller's obligation of confidentiality shall not apply to information which: (i) at the time of or after the disclosure thereof by Buyer to Seller becomes, through no act or omission of Seller, part of the public domain; (ii) at the time of the disclosure thereof by Buyer to Seller was already in the

*Jcø 3/1/16*

possession of the Seller; (iii) corresponds in substance to that furnished to Seller by others than Buyer as a matter of right without restrictions of disclosure; (iv) was disclosed by Seller after a period of ten (10) years from date of its receipt by Seller; or (v) was developed by Seller independent of the information in question.

(b) Seller retains all intellectual property rights, whether registered or un-registered, including trademarks, patents, and copyright of all documents, drawing rights, design rights, developed programs, software, models and other data provided or developed in the course of the PO ("Seller IP"), and hereby grants Buyer a non-exclusive, non-assignable royalty free irrevocable license to use Seller IP delivered to Buyer or embodied in the Products or related deliverables only for the purposes of Buyer's installation, operation and maintenance the Products. Buyer shall hold Seller's IP in strictest confidence and not disclose it to others except where such information at the time of or after the disclosure thereof by Seller to Buyer becomes public through no act or omission of Buyer or Buyer is obligated by law to disclose such information to federal or state agencies.

13. **Payment:** Unless otherwise stated in this PO, payment will be due thirty (30) days after the Products and all documentation required by this PO are received and accepted by Buyer. All claims for money due or to become due from Buyer shall be subject to deduction or set-off by Buyer by reason of any claim or liability arising from this PO.

14. **Notification of Recalls, Technical Service Bulletins and Upgrades:** Seller shall notify Buyer within two (2) business days of receipt by Seller of any of the following: (a)Any notice of a voluntary or involuntary recall of any defective or potentially defective Good or Product containing or incorporating such Good, including but not limited to a recall by a regulatory agency or in accordance with applicable laws or regulations; (b) Any software or firmware change or upgrade related to any Good or Product furnished in conjunction with this PO, including but not limited to an upgrade or change required in accordance with applicable laws or regulations; and (c)Any technical service bulletins or similar recommended procedures applicable to any Good or Product provided under this PO. Notification as required herein shall be made to the following central repository for Buyer: tech_bulletins@alyeska-pipeline.com.

15. **Access:** Buyer shall have access to Seller's premises and where applicable, to subcontractor's premises, at any reasonable time for the purpose of ascertaining the progress of work under this PO.

16. **Compliance with Laws:** Seller shall comply with all applicable laws, executive orders and regulations including but not limited to laws concerning non-discrimination in employment, including 43 CFR Part 27, implementing Section 403, public law 93-153 (1973), OSHA, Hazardous Materials Transportation Act, Toxic Substances Control Act and the Consumer Product Safety Act. In the event that this PO is considered a federal subcontract under the OFCCP regulations, and thus, subject to those regulations, Seller represents that it is a supplier of commercial items (as defined in FAR 52.244-6) which are sold on a fixed price basis in a competitive market.

17. **Applicable Law:** This PO and the relationship of the parties shall be governed by and interpreted in accordance with the laws of the State of Alaska, without regard to its conflicts of law rules. Any litigation arising out of or relating to this PO shall be brought only in a court of competent jurisdiction in Anchorage, Alaska.

18. **Remedies Cumulative:** Except where a specific remedy is expressly set forth as exclusive herein, the rights and remedies available to Buyer under this PO are in addition to and not in limitation of the rights and remedies otherwise available at law or in equity.

19. **Additional Terms:** If this PO involves an international contract for the sale of Goods, the source of definitions for commercial delivery terms shall be the 2010 Incoterms. The invalidity or unenforceability of any provision of the Agreement shall not affect the validity or enforceability of its other provisions and the remaining provisions shall remain in full force and effect.

20. **Changes:** Buyer shall have the right to require additional work, issue additional instructions, or make changes by written direction to Seller in any one or more of the following: (a) drawings, designs, or specifications; (b) method of shipment or packaging; (c) delivery schedule; and (d) quantities. If any such change results in a change in Seller's cost of performance or in the time of performance, an adjustment in price and time for performance will be made by the

Page 4 of 5



parties in writing; provided, however, that Seller shall notify Buyer of the request for such adjustment within fifteen (15) days after receipt by Seller of the notice of such change. Seller's writing shall detail the reasons for the price adjustment to the Buyer. Seller agrees not to make any changes that affect this PO without the prior written approval of the Buyer's authorized representative.

21. **Buyer's Property:** All property used by Seller in connection with this PO which is owned, supplied, charged to or paid for by Buyer shall be and remain the property of Buyer and shall be subject to removal and inspection by Buyer at any time. Seller shall (a) identify and mark all such property as Buyer's property; (b) use such property only to perform its obligation under this PO; (c) maintain, insure, and preserve such property in accordance with Buyer's directions; and (d) returned to Buyer when this PO has been completed or terminated.

22. **Price and Taxes:** The price specified herein does not include any taxes or duties of any kind that Seller is required to pay with respect to the Products, including any charges associated with obtaining necessary import/export licenses.

23. **Excusable Delays:** Neither party shall be liable for any delay in or failure of delivery or acceptance or any other impairment of its performance under this PO, in whole or in part, caused by the occurrence of any contingency beyond its control, including without limitation, war, riot, or governmental action.

24. **Survival of Obligations:** The obligations set forth in paragraphs 3, 5, 6, 7, 9, 12, 17, and 25 of this PO shall survive completion or termination of this PO.

25. **Limitation on Liability:** NO PARTY SHALL BE LIABLE FOR INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES, INCLUDING LOSS OF PROFITS, REVENUES, OR OTHER ECONOMIC LOSSES WHETHER DEEMED DIRECT OR CONSEQUENTIAL, ARISING UNDER ANY CAUSE OR COMBINATION OF CAUSES, INCLUDING ANY THEORIES OF CONCURRENT OR JOINT LIABILITY. IN NO EVENT WILL THE CUMULATIVE LIABILITY OF SELLER AND ITS AFFILIATES BE IN EXCESS OF ONE HUNDRED FIFTY PERCENT (150%) OF THE PO PRICE, REGARDLESS OF CAUSE OR ANY COMBINATION OF CAUSES WHATSOEVER. ALL INSURANCE PROCEEDS WHICH MAY BE PAID BY THE INSURERS OF SELLER OR ITS AFFILIATES WILL BE CREDITED AGAINST THE LIMITATION STATED ABOVE AND SHALL REDUCE THE AMOUNT OF THE CUMULATIVE LIABILITY OF SELLER AND ITS AFFILIATES. THESE LIMITATIONS SHALL APPLY NOTWITHSTANDING ANY FUNDAMENTAL BREACH OR FAILURE OF ESSENTIAL PURPOSE OF ANY LIMITED REMEDY.

26. **Entire Agreement:** This PO constitutes the complete and exclusive statement of the terms of the agreement between Buyer and Seller with respect to the subject matter and supersedes all prior oral or written agreements, commitments or understandings with respect to such subject matter. No modification of this PO shall be binding upon Buyer or Seller unless in writing and signed by Buyer's and Seller's authorized representatives.

*Jim C. Frankl 3/11/16*

Page 5 of 5

EXHIBIT B, Page 8 of 8

**EXHIBIT A**

## PURCHASE ORDER



**Supplier Details**
JOHN ZINK COMPANY, LLC
11920 EAST APACHE
TULSA
OK
74116
United States
**Supplier Contact Name:**

Phone:
Fax:
Email:

| Purchase Order No | 16314381 |
|---|---|
| Revision | 2 |
| PO Issue Date | 25-JUL-2016 |
| Revision Date | 25-JUL-2016 |
| Buyer Contact Name | Daniels,Natalie |
| Buyer Telephone | 907-787-8310 |
| Buyer Email | Natalie.Daniels@alyeska-pipeline.com |
| Reference Document | |

Invoice direct to: _AccountsPayable@Alyeska-Pipeline.com_, or Fax Invoice to: 907-762-2603, or Mail Invoice USPS to;
Alyeska Pipeline Service Company, Attn: Accounts Payable, P. O. Box 196606, Anchorage AK 99519-6606

| Payment Terms | Transit Type | Carrier Name | FOB Point | FOB Code |
|---|---|---|---|---|
| Net 30 | See Below | To Be Arranged | TULSA, OK | Freight Collect |

| | |
|---|---|
| **Primary Ship To Location:** | Alyeska Central Warehouse<br>Alyeska Pipeline Service Co.<br>709 Bidwill Avenue<br><br>Fairbanks, AK 99701<br>United States |
| **Special Instructions / Notes to Supplier:** | REVISON 2 ISSUED 07/25/2016 TO ADD LINES 9-11 PER VIRGIL WHITTAKER<br>ALL OTHER TERMS AND CONDITIONS OF ORIGINAL PURCHASE ORDER AND ANY PRECEDING CHANGE ORDERS SHALL REMAIN THE SAME<br><br>REV001 ISSUED 5/17/16 TO JOHN ZINK COMPANY LLC FOR THE ADDITION OF LINE #8 THERMOCOUPLES ALL OTHER TERMS AND CONDITIONS OF ORIGINAL PURCHASE ORDER AND ANY PRECEDING CHANGE ORDERS SHALL REMAIN THE SAME.<br><br>THIS PURCHASE ORDER DATED 5/5/16 IS ISSUED TO REPLACE THE ORIGINAL PO #16312482 DATED 3/15/16 FOR THE SOLE PURPOSE OF ESTABLISHING A NEW VENDOR NUMBER TO CORRECT SUPPLIER PROFILE IN ALYESKA'S INTERNAL ENTERPRISE BUSINESS SYSTEM. IN ADDITION, REFERENCE TO UCC-1 REQUIREMENT HAS BEEN DELETED. THIS REQUIREMENT HAS BEEN SUPERSEEDED BY KOCH CHEMICAL TECHNOLOGY GROUP, LLC CORPORATE GUARANTEE DATED 4/22/16. ALL OTHER TERMS AND CONDITIONS OF ORIGINAL PO REMAIN UNCHANGED.<br><br>ORIGINAL PO FOLLOWED WRITTEN QUOTATION BY JOSH KIMREY ON JOHN ZINK COMPANY LLC QUOTE #15-S1349, REV 7 DATED 3/10/16 AND CLARIFICATION EMAILS DATED 3/14/16 AND 3/15/16 FROM JOSH.KIMREY@JOHNZINK.COM 918-234-5702.<br><br>BY SHIPPING THE GOODS SPECIFIED HERIN, OR ACKNOWLEDGING RECEIPT OF THIS ORDER, SELLER AGREES TO THOSE NEGOTIATED TERMS AND CONDITIONS BETWEEN ALYESKA PIPELINE AND JOHN ZINK COMPANY LLC INCLUDED HERIN OR ATTACHED HERETO AS WELL AS THOSE SET FORTH ON THE FACE OF THIS ORDER. PURCHASER HEREBY OBJECTS TO ANY DIFFERENT OR ADDITIONAL TERMS CONTAINED IN THE SELLERS ACCEPTANCE OF THIS ORDER.<br><br>ADDITIONS OR REVISIONS TO SPECIFICATIONS SHALL NOT BE MADE WITHOUT PRIOR WRITTEN AUTHORIZATION FROM ALYESKA BUYER.<br><br>PROCUREMENT SPECIFICATION: PROJECT G014-HSP1/REV1 - PS01 FLARE TIP AND ASSOCIATED COMPONETS.<br><br>ALYESKA MASTER SPECIFICATION G540 - PACKAGING, CRATING AND SHIPPING GUIDELINES.<br><br>SUBMITTAL DATA REQUIRED PER PROJECT SPEC G014-HSP1/REV1 MUST BE SUBMITTED DIRECTLY TO THE RESPONSIBLE ENGINEER FOR APPROVAL PRIOR TO START OF FABRICATION. ALL COMMUNICATION MUST BE COPIED TO THE BUYER.<br>PROJECT ENGINEER: THOMAS MARCHESANI Thomas.Marchesani@alyeska-pipeline.com<br><br>SUPPLIER MUST PROVIDE FABRICATION SCHEDULE WITHIN 1 WEEK OF APPROVED PURCHASE ORDER TO ALYESKA BUYER.<br><br>ALL PROGRESS PAYMENT INVOICES MUST INCLUDE THE APPROPRIATE DOCUMENTATION TO VERIFY EACH MILESTONE PAYMENT REQUEST. |

| | | | | | | |
|---|---|---|---|---|---|---|
| | EXPEDITED DELIVERY REFERENCED ON THE PURCHASE ORDER LINE ITEM #7 PER THE AGREEMENT IS PRORATED ON A DAILY BASIS NOT TO EXCEED $155,500.00. THE EXPEDITED DELIVERY EXPIRES ON AUGUST 16, 2016.<br><br>VENDOR IS REQUESTED TO NOTIFY BUYER IN THE EVENT THAT THE SHIP DATE LISTED ON THE PURCHASE ORDER CHANGES.<br><br>SHIPPING TO BE DETERMINED BY ALYESKA PIPELINE.<br><br>IT SHALL BE THE VENDORS RESPONSIBILITY TO ENSURE THAT MATERIALS LISTED ARE PROPERLY PACKAGED AND PROTECTED FOR RECEIVING AND INSPECTION AT APSC FACILITY.<br><br>P.O. NUMBER MUST BE SHOWN ON ALL SHIPPING DOCUMENTS, INVOICES AND ANY CORRESPONDENCE RELATING TO THIS ORDER.<br><br>VENDOR SHALL ACKNOWLEDGE RECEIPT AND ACCEPTANCE OF THIS PURCHASE ORDER BY COMPLETING AND RETURNING THE ATTACHED ACKNOWLEDGMENT FORM TO: NATALIE DANIELS Natalie.Daniels@alyeska-pipeline.com OR FAX: 907.787.8730 | | | | | |

| Line | Part Number/Description | Supplier Ship Date | Quantity | UOM | Unit Price (USD) | Amount (USD) |
|---|---|---|---|---|---|---|
| 1 | Item Number (CID): 255006<br><br>Item Short Description: FLARE ASSEMBLY<br><br>Item Long Description: TO REPLACE MODEL FAB/F 48" AIROIL-FLAREGAS FLARE TIP ASSEMBLY, REPLACED DRAWING NUMBER AA37671. NEW OR UPDATED DRAWING SUBMITTAL REQUIRED FOR PURCHASE ORDER COMPLETION.<br><br>Model:<br>Part#:FABRICATED BASED ON DWG AA37671<br>Manufacturer:JOHNZINK | 16-AUG-2016<br><br>Ship To Location: Alyeska Central Warehouse Alyeska Pipeline Service Co. 709 Bidwill Avenue Fairbanks, AK 99701 United States<br><br>Notes: | 1 | Assembly | 0.00 | 0.00 |
| 2 | Item Short Description: Process Engineering<br><br>Item Long Description: | Ship To Location: Alyeska Central Warehouse Alyeska Pipeline Service Co. 709 Bidwill Avenue Fairbanks, AK 99701 United States<br><br>Notes: | 1 | Each | 3,500.00 | 3,500.00 |
| 3 | Item Short Description: Payment Progress, 30% Invoiced on Issuance or Drawings for Approval<br><br>Item Long Description: | Ship To Location: Alyeska Central Warehouse Alyeska Pipeline Service Co. 709 Bidwill Avenue Fairbanks, AK 99701 United States<br><br>Notes: | 1 | Each | 233,040.00 | 233,040.00 |
| 4 | Item Short Description: Payment Progress, 40% Invoiced on Receipt of the Major Alloy 800 Plate and Document Submittal of that Material Being Allocated to Project<br><br>Item Long Description: | Ship To Location: Alyeska Central Warehouse Alyeska Pipeline Service Co. 709 Bidwill Avenue Fairbanks, AK 99701 United States<br><br>Notes: | 1 | Each | 310,720.00 | 310,720.00 |
| 5 | Item Short Description: Payment Progress, 25% Invoiced Upon Notification of Readiness to Ship<br><br>Item Long Description: | Ship To Location: Alyeska Central Warehouse Alyeska Pipeline Service Co. 709 Bidwill Avenue Fairbanks, AK 99701 United States<br><br>Notes: | 1 | Each | 194,200.00 | 194,200.00 |

EXHIBIT C, Page 2 of 9

**EXHIBIT A**

| Line | Part Number/Description | Supplier Ship Date | Quantity | UOM | Unit Price (USD) | Amount (USD) |
|---|---|---|---|---|---|---|
| 6 | Item Short Description: Payment, 5% Invoiced Upon Receipt and Acceptance of all Submittal Requirements by Alyeska Pipeline<br><br>Item Long Description: | | 1 | Each | 38,840.00 | 38,840.00 |
| | | Ship To Location: Alyeska Central Warehouse Alyeska Pipeline Service Co. 709 Bidwill Avenue Fairbanks, AK 99701 United States<br><br>Notes: | | | | |
| 7 | Item Short Description: Expedited Delivery; Pro-Rated 18-22 Weeks<br><br>Item Long Description: | 19-JUL-2016 | 155500 | Each | 1.00 | 155,500.00 |
| | | Ship To Location: Alyeska Central Warehouse Alyeska Pipeline Service Co. 709 Bidwill Avenue Fairbanks, AK 99701 United States<br><br>Notes: | | | | |
| 8 | Item Short Description: Thermocouple, Type K & Mounting Bracket Assembly - Matches Existing TC/Assembly<br><br>Item Long Description: | 16-AUG-2016 | 3 | Each | 889.00 | 2,667.00 |
| | | Ship To Location: Alyeska Central Warehouse Alyeska Pipeline Service Co. 709 Bidwill Avenue Fairbanks, AK 99701 United States<br><br>Notes: | | | | |
| 9 | Item Short Description: 2" FFG Pilot Manifold W/ 1" Connecting Risers<br><br>Item Long Description: | 16-AUG-2016 | 1 | Each | 6,010.00 | 6,010.00 |
| | | Ship To Location: Alyeska Central Warehouse Alyeska Pipeline Service Co. 709 Bidwill Avenue Fairbanks, AK 99701 United States<br>Transit Type: See Below  Carrier Name: To Be Arranged  FOB Point: TULSA, OK  FOB Code: Freight Collect<br><br>Notes: | | | | |
| 10 | Item Short Description: Extended Burnback Thermocouples<br><br>Item Long Description: | 16-AUG-2016 | 4 | Each | 4,060.00 | 16,240.00 |
| | | Ship To Location: Alyeska Central Warehouse Alyeska Pipeline Service Co. 709 Bidwill Avenue Fairbanks, AK 99701 United States<br>Transit Type: See Below  Carrier Name: To Be Arranged  FOB Point: TULSA, OK  FOB Code: Freight Collect<br><br>Notes: | | | | |
| 11 | Item Short Description: Extended Pilot Thermocouples<br><br>Item Long Description: | 16-AUG-2016 | 7 | Each | 3,264.50 | 22,851.50 |
| | | Ship To Location: Alyeska Central Warehouse Alyeska Pipeline Service Co. 709 Bidwill Avenue Fairbanks, AK 99701 United States<br>Transit Type: See Below  Carrier Name: To Be Arranged  FOB Point: TULSA, OK  FOB Code: Freight Collect<br><br>Notes: | | | | |

Purchase Order Total Amount: $983,568.50

EXHIBIT C, Page 3 of 9

EXHIBIT A



# COMPREHENSIVE PO TERMS AND CONDITIONS

1. **Offer and Acceptance:** This Purchase Order, including any attachments ("PO") is an offer to purchase and may be accepted by Seller either in writing or by conduct which recognizes the existence or formation of a contract including, without limitation, the delivery of any goods to Buyer. Any such acceptance is limited to the express terms of this PO. Buyer hereby objects to and rejects any proposal for additional or different terms or any attempt by Seller to vary any of the terms of this PO, and any such additional or different terms or variances shall be deemed material. Any such proposal or attempt by Seller that would materially change the description, quantity, price or delivery schedule of the goods shall constitute a rejection of this offer. Any other such proposal or attempt shall not operate as a rejection, but this offer shall be deemed accepted by Seller without regard thereto.

2. **Description and Quality of Goods:** All specifications, drawings and descriptions set forth or referred to herein and (to the extent not inconsistent with such specifications, drawings and descriptions) all statements and representations made by Seller regarding the quality or properties of the goods purchased are a part of this PO, and Seller shall furnish the goods in strict accordance therewith. No changes in Buyer's design, drawings or specifications or in the quality, quantity or nature of the goods shall be made unless authorized by Buyer's authorized representative in a written amendment to this PO accepted by Seller. If Seller notes any inconsistency or inaccuracy in information furnished by Buyer or if Seller believes purchaser's design should be modified, Seller shall notify Buyer in writing. No review or approval by Buyer of Seller's design, specifications, drawings, test procedures, practices or methods shall relieve Seller from any of its obligations under this PO.

3. **Warranties:** (a) Seller expressly warrants that it shall deliver good and marketable title to all goods furnished pursuant to this PO ("Products") free from defects, liens and encumbrances; (b) Seller warrants that the Products (1) will be of good quality and workmanship and free from all defects (latent or patent); (2) will conform to all specifications, drawings, descriptions and statements of work furnished specified or agreed to in the PO; (3) will conform to any samples and to any statements made on the containers, labels, sales literature or advertisements for such Products; and (4) will be adequately contained, packaged, marked and labeled. (c) These warranties shall be in effect for the period of the earlier of 24 months after the date that the Products are available for shipment or 12 months after startup of the Products. If during the warranty period any goods prove upon examination by Buyer not to meet the warranties set forth above, Seller will repair the Products or supply identical or substantially similar replacement Products EX Works Seller's manufacturing facility, as determined through mutual agreement between Seller and Buyer at the time. Any replacement Products will be warranted for the unexpired portion of the warranty period applicable to the particular Products or eight (8) months, whichever is longer, but in no event will the extended warranty period exceed eight (8) months after the expiration of the original warranty period. (d) Seller will not be responsible for the costs of removal, installation, re-installation or making of access of any goods or items, where such removal, installation, re-installation or making of access is required to repair or replace any defective Products. Furthermore, Seller will not be responsible for and assumes no liability for materials or workmanship, labor costs or other related expenses for any work performed by third parties in the repair or replacement of defective Products. (e) The warranties set forth in this Agreement will be voided if the Products have not been stored, installed, maintained or operated in accordance with accepted industrial practice or any specific instructions provided by Seller. (f) ALL WARRANTIES OR REPRESENTATIONS NOT SPECIFICALLY INCLUDED IN THIS PO, INCLUDING THOSE WITH RESPECT TO MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE WHETHER EXPRESSED, IMPLIED, STATUTORY OR ARISING FROM A COURSE OF DEALING, USAGE OF THE TRADE OR OTHERWISE WITH RESPECT TO ANY PRODUCTS ARE EXPRESSLY EXCLUDED. BUYER'S REMEDIES FOR BREACH OF WARRANTY ARE SPECIFICALLY LIMITED TO THE REPAIR OR REPLACEMENT OF THE PRODUCTS AND ARE EXCLUSIVE OF ALL OTHER REMEDIES. Seller's obligations under these warranties shall survive and be unaffected by any inspection, testing, acceptance, payment and/or use. In the event of Seller's failure to repair or replace such nonconforming Product within a reasonable time given the totality of the circumstances, Buyer, after reasonable notice to Seller, may repair or replace such Product and charge Seller for all costs reasonably incurred by Buyer in doing so.

Page 1 of 5

*Po= 3/11/16*



4. **Quality:** Seller warrants that it has a Quality Assurance Program that provides for the quality of the Products furnish under this PO.

5. **Indemnification:** Seller shall indemnify, defend and hold harmless Buyer from and against any and all loss, liability, cost or expense, and any and all claims by or liability to any third party for loss, damage or injury to persons or property which is based on or in any manner arises out of Seller's performance or nonperformance of this PO, but only to the extent that any loss, damage, or injury resulted from the negligence or willful misconduct of Seller.

6. **Infringement of Third Party Rights:** Seller agrees to defend, indemnify and hold harmless Buyer against any and all loss, liability, costs or expenses, and any and all claims by or liability to any third party for loss, damage or injury arising out of any actual or alleged infringement of any United States or foreign patent, trademark, copyright or other intellectual property right arising from the sale or use of any Product supplied by Seller under this PO. In case any Product or any part or use thereof, is held to constitute an infringement, Seller shall, at its own expense, either procure for Buyer the right to continue using such Product or part or replace the same with a substantially equal but non-infringing Product meeting the requirements of this PO. Seller's obligations under this Article 6 shall not apply to any liability for infringement (i) of any method patent where the Products are used with other apparatus for carrying out a process resulting in a combination of steps which is deemed to infringe a method patent or patent directed to a combination of steps, (ii) where the Products are modified by Buyer, (iii) where the Products are used by Buyer in a manner different than the use communicated to and understood by Seller at the time the Products were sold to Buyer and such use constitutes infringement, or (iv) with respect to claims of infringement where the Products were designed and manufactured in accordance with the design or specifications furnished or required by Buyer.

7. **Inspection, Testing and Acceptance or Rejection.** All Products shall be subject to Buyer's inspection. If Buyer intends to carry out inspections or testing of the Products prior to shipping and/or during their manufacture, this PO will so state. If any inspection or test is made on Seller's premises, Seller, without additional charge, shall provide all reasonable facilities and assistance for the safety and convenience of Buyer's inspectors. Such inspections and tests shall be performed in such a manner as to not unduly delay the work. Buyer shall include instructions in the specifications for Seller to notify Buyer in advance of readiness for any test or step in the inspection process. Seller shall give Buyer the PO number, the location of Seller's plant and whether all or part of the Product is ready for inspection. All work shall be prepared so as to permit complete inspection for conformity to this PO and any applicable specifications. Neither the opportunity to inspect, nor the conducting of any inspection and/or testing shall be deemed to constitute acceptance of Products by Buyer or to relieve Seller from its own testing, inspection and quality control obligations. Buyer shall have the right to inspect and function test the Products within thirty (30) days from installation of Products at Pump Station 1, notwithstanding any prior inspection or testing by Buyer. All defective or nonconforming Products may be rejected by Buyer without prejudice to any other rights Buyer may have by reason of such defects or nonconformity, provided that if Buyer fails to perform a function test and/or reject the Products within nine (9) months after the date the Products are available for shipment, the Products shall be deemed accepted. Thereafter, claims for non-conforming Products shall be subject exclusively to the warranty provisions in paragraph 3.

8. **Time of Performance and Delivery.** Time is of the utmost importance in the performance of this PO by Seller. Seller shall inform Buyer immediately whenever it has reason to believe that circumstances within or beyond its control are likely to delay or prevent Seller's timely performance under this PO. Notwithstanding anything to the contrary contained in this PO, in the event that delivery of the Products is delayed for reasons attributable to Seller, Seller will pay to Buyer liquidated damages (as a genuine pre-estimate of loss and not as a penalty) of 0.5% per day of the total price of the PO (not including any bonus value) up to a maximum of 5% of the total PO price. Such daily liquidated damages shall be paid by Seller for each day past 22 weeks from the date of execution of this PO that Product is not ready for shipment. Buyer shall not impose liquidated damages if delivery is complete except for minor items which have no adverse impact on the installation schedule of the equipment, or if the Buyer suffers no demonstrable financial loss, in form of liquidated damages, as the result of the Seller's delayed delivery. Payment of liquidated damages shall be Buyer's sole remedy for delay until the maximum amount of liquidated damages is reached.

Page 2 of 5



9. **Termination:** Buyer shall have the right to terminate this PO or any part at any time with or without cause by written notice to Seller. (a) With Cause: Buyer may terminate all or part of this PO with cause by written notice to Seller under the following circumstances: (i) Seller fails to make any delivery in accordance with the agreed delivery date or schedule or otherwise breaches or fails to comply with any other material obligation under the PO and fails to commence to cure such breach within five (5) business days after receipt of notice of same from Buyer; (ii) Seller fails to make timely progress in the production of the Products so as to create reasonable grounds for Buyer's insecurity with respect to Seller's performance of its obligation under this PO; (iii) Seller becomes insolvent; (iv) any proceeding in bankruptcy, reorganization or for the appointment of a receiver or trustee is filed by or against Seller; or (v) Seller makes an assignment for the benefit of its creditors. In the event of termination for cause, Buyer may purchase or otherwise acquire the Products elsewhere on such terms or in such manner as Buyer may deem appropriate and Seller shall be liable to Buyer for any excess costs or other expenses reasonably incurred by Buyer. Buyer will make good faith efforts to mitigate its damages. Buyer shall have no obligation for costs relating to any Products not delivered to Buyer before notice of termination is given to Seller, and title to same shall remain with Seller. Buyer's exercise of the rights described above shall be without prejudice to any other rights or remedies it may have. Any waiver by Buyer of any breach or default by Seller shall not constitute a continuing waiver or a waiver of any other breach or default. (b) Without Cause: Buyer may, at any time, terminate this PO without cause by giving written notice of termination to Seller. In the event of such termination, Seller shall immediately stop work under this PO and immediately cause its suppliers and subcontractors to cease such work. Seller shall be entitled to (a) reimbursement for any reasonable non-recoverable direct costs for labor and materials incurred in the performance of this PO prior to its termination, (b) along with those costs which arose out of or resulted from the cancellation, such as terminating orders with suppliers, plus (c) a termination fee equal to twenty-five percent (25%) of the PO price. In no event shall Seller be entitled to reimbursement for costs incurred by Seller for work performed after its receipt of the termination notice or costs incurred by Seller, Seller's suppliers or subcontractors which could have reasonably been avoided. The value of any material paid for by Buyer but left in the hands of Seller shall be taken into account in calculating the amounts due to Seller. In the case of termination by Buyer of all or part of this PO without cause, any claim by Seller for such termination must be submitted to Buyer in writing no later than ninety (90) days after Seller's receipt of such termination notice. Seller waives any claim for reimbursement of the costs provided for herein if Seller fails to notify Buyer in writing of such claim within ninety (90) days after Seller's receipt of notice of termination.

10. **Assignment:** Seller shall not, without Buyer's prior written consent, which Buyer shall not unreasonably withhold (a) assign this PO or any right or interest therein; or (b) delegate any obligation that it owes to Buyer under this PO. Any attempted assignment or delegation shall be void and ineffective for all purposes unless made in conformity with this paragraph.

11. **Title and Risk of Loss:** All Products shall be suitably prepared and packed for shipment in accordance with all instructions defined in this PO and shall be of a quality to insure safe delivery. All packaging, boxing and shipping charges shall be paid by Seller unless otherwise stated in this PO. All returnable packing or handling material debited to the Buyer's account must be clearly marked "Returnable." Goods delivered in error or in excess of this PO may be returned at Seller's expense and risk. Unless otherwise instructed, Seller shall ship Products in such a form that freight charges, whether based on cubic measurements or by weight, are limited to the minimum freight costs appropriate to the consignment. Seller shall confer with Buyer, prior to shipment, in selection of the mode of transportation and routing. Unless otherwise stated on the face of this PO, title to the Products shall pass to Buyer upon delivery of the conforming Products to the F.O.B. point specified in the PO. Seller assumes all risk of loss to the Products prior to such delivery.

12. **Confidentiality:** (a) Information, drawings, data, design, inventions, software, ideas, suggestions and other information supplied by Buyer shall be Buyer's property and shall be held in confidence by Seller. Such information shall not be reproduced, used, modified or disclosed to others by Seller without Buyer's prior written consent and shall be returned to Buyer upon Buyer's demand. Seller's obligation of confidentiality shall not apply to information which: (i) at the time of or after the disclosure thereof by Buyer to Seller becomes, through no act or omission of Seller, part of the public domain; (ii) at the time of the disclosure thereof by Buyer to Seller was already in the

Page 3 of 5

*J℘ 3/11/16*

**EXHIBIT A**

**Alyeska pipeline**

possession of the Seller; (iii) corresponds in substance to that furnished to Seller by others than Buyer as a matter of right without restrictions of disclosure; (iv) was disclosed by Seller after a period of ten (10) years from date of its receipt by Seller; or (v) was developed by Seller independent of the information in question.

(b) Seller retains all intellectual property rights, whether registered or un-registered, including trademarks, patents, and copyright of all documents, drawing rights, design rights, developed programs, software, models and other data provided or developed in the course of the PO ("Seller IP"), and hereby grants Buyer a non-exclusive, non-assignable royalty free irrevocable license to use Seller IP delivered to Buyer or embodied in the Products or related deliverables only for the purposes of Buyer's installation, operation and maintenance the Products. Buyer shall hold Seller's IP in strictest confidence and not disclose it to others except where such information at the time of or after the disclosure thereof by Seller to Buyer becomes public through no act or omission of Buyer or Buyer is obligated by law to disclose such information to federal or state agencies.

13. **Payment:** Unless otherwise stated in this PO, payment will be due thirty (30) days after the Products and all documentation required by this PO are received and accepted by Buyer. All claims for money due or to become due from Buyer shall be subject to deduction or set-off by Buyer by reason of any claim or liability arising from this PO.

14. **Notification of Recalls, Technical Service Bulletins and Upgrades:** Seller shall notify Buyer within two (2) business days of receipt by Seller of any of the following: (a)Any notice of a voluntary or involuntary recall of any defective or potentially defective Good or Product containing or incorporating such Good, including but not limited to a recall by a regulatory agency or in accordance with applicable laws or regulations; (b) Any software or firmware change or upgrade related to any Good or Product furnished in conjunction with this PO, including but not limited to an upgrade or change required in accordance with applicable laws or regulations; and (c)Any technical service bulletins or similar recommended procedures applicable to any Good or Product provided under this PO. Notification as required herein shall be made to the following central repository for Buyer: tech_bulletins@alyeska-pipeline.com.

15. **Access:** Buyer shall have access to Seller's premises and where applicable, to subcontractor's premises, at any reasonable time for the purpose of ascertaining the progress of work under this PO.

16. **Compliance with Laws:** Seller shall comply with all applicable laws, executive orders and regulations including but not limited to laws concerning non-discrimination in employment, including 43 CFR Part 27, implementing Section 403, public law 93-153 (1973), OSHA, Hazardous Materials Transportation Act, Toxic Substances Control Act and the Consumer Product Safety Act. In the event that this PO is considered a federal subcontract under the OFCCP regulations, and thus, subject to those regulations, Seller represents that it is a supplier of commercial items (as defined in FAR 52.244-6) which are sold on a fixed price basis in a competitive market.

17. **Applicable Law:** This PO and the relationship of the parties shall be governed by and interpreted in accordance with the laws of the State of Alaska, without regard to its conflicts of law rules. Any litigation arising out of or relating to this PO shall be brought only in a court of competent jurisdiction in Anchorage, Alaska.

18. **Remedies Cumulative:** Except where a specific remedy is expressly set forth as exclusive herein, the rights and remedies available to Buyer under this PO are in addition to and not in limitation of the rights and remedies otherwise available at law or in equity.

19. **Additional Terms:** If this PO involves an international contract for the sale of Goods, the source of definitions for commercial delivery terms shall be the 2010 Incoterms. The invalidity or unenforceability of any provision of the Agreement shall not affect the validity or enforceability of its other provisions and the remaining provisions shall remain in full force and effect.

20. **Changes:** Buyer shall have the right to require additional work, issue additional instructions, or make changes by written direction to Seller in any one or more of the following: (a) drawings, designs, or specifications; (b) method of shipment or packaging; (c) delivery schedule; and (d) quantities. If any such change results in a change in Seller's cost of performance or in the time of performance, an adjustment in price and time for performance will be made by the

Page 4 of 5



parties in writing; provided, however, that Seller shall notify Buyer of the request for such adjustment within fifteen (15) days after receipt by Seller of the notice of such change. Seller's writing shall detail the reasons for the price adjustment to the Buyer. Seller agrees not to make any changes that affect this PO without the prior written approval of the Buyer's authorized representative.

21. **Buyer's Property:** All property used by Seller in connection with this PO which is owned, supplied, charged to or paid for by Buyer shall be and remain the property of Buyer and shall be subject to removal and inspection by Buyer at any time. Seller shall (a) identify and mark all such property as Buyer's property; (b) use such property only to perform its obligation under this PO; (c) maintain, insure, and preserve such property in accordance with Buyer's directions; and (d) returned to Buyer when this PO has been completed or terminated.

22. **Price and Taxes:** The price specified herein does not include any taxes or duties of any kind that Seller is required to pay with respect to the Products, including any charges associated with obtaining necessary import/export licenses.

23. **Excusable Delays:** Neither party shall be liable for any delay in or failure of delivery or acceptance or any other impairment of its performance under this PO, in whole or in part, caused by the occurrence of any contingency beyond its control, including without limitation, war, riot, or governmental action.

24. **Survival of Obligations:** The obligations set forth in paragraphs 3, 5, 6, 7, 9, 12, 17, and 25 of this PO shall survive completion or termination of this PO.

25. **Limitation on Liability:** NO PARTY SHALL BE LIABLE FOR INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES, INCLUDING LOSS OF PROFITS, REVENUES, OR OTHER ECONOMIC LOSSES WHETHER DEEMED DIRECT OR CONSEQUENTIAL, ARISING UNDER ANY CAUSE OR COMBINATION OF CAUSES, INCLUDING ANY THEORIES OF CONCURRENT OR JOINT LIABILITY. IN NO EVENT WILL THE CUMULATIVE LIABILITY OF SELLER AND ITS AFFILIATES BE IN EXCESS OF ONE HUNDRED FIFTY PERCENT (150%) OF THE PO PRICE, REGARDLESS OF CAUSE OR ANY COMBINATION OF CAUSES WHATSOEVER. ALL INSURANCE PROCEEDS WHICH MAY BE PAID BY THE INSURERS OF SELLER OR ITS AFFILIATES WILL BE CREDITED AGAINST THE LIMITATION STATED ABOVE AND SHALL REDUCE THE AMOUNT OF THE CUMULATIVE LIABILITY OF SELLER AND ITS AFFILIATES. THESE LIMITATIONS SHALL APPLY NOTWITHSTANDING ANY FUNDAMENTAL BREACH OR FAILURE OF ESSENTIAL PURPOSE OF ANY LIMITED REMEDY.

26. **Entire Agreement:** This PO constitutes the complete and exclusive statement of the terms of the agreement between Buyer and Seller with respect to the subject matter and supersedes all prior oral or written agreements, commitments or understandings with respect to such subject matter. No modification of this PO shall be binding upon Buyer or Seller unless in writing and signed by Buyer's and Seller's authorized representatives.

*Jim C. Franklin 3/11/16*

Case 3:19-cv-00101-HRH   Document 1-1   Filed 04/12/19   Page 36 of 41

SUPPLIER ACCEPTED AND AGREED TO

ALYESKA PIPELINE SERVICE COMPANY
ACTING as AGENT for and on behalf of the
OWNERS of the Trans-Alaska Pipeline System
(TAPS)

Print Name: *Jim Franklin*

By: _____  7/28/16
    (Supplier)         (Date)

By: _____  _____
    (Agent)            (Date)

YELLOW HIGHLIGHTED FIGURES ARE TOTAL
INVOICE AMOUNTS

Sum of Project Burdened Cost

| Employee/Supplier | Comment | PO Numbe | Total | SCOPE OF WORK |
|---|---|---|---|---|
| AFOGNAK NATIVE CORPORATION | Eagle 9/1/2017 - 9/30/2017 | (blank) | 1,268.00 | |
| Total | | | 1,268.00 | Housing charges $158 a night |
| AIR LIQUIDE AMERICA L.P. | ELECTRODE, WELDING, TECH-ROD 182, 1/8"DIA, 14"L, NICK | 17307242 | 3,430.00 | |
| | ELECTRODE, WELDING, TECH-ROD 182, 3/32"DIA, 12"L, NIC | 17307242 | 2,447.04 | |
| | GAS, COMPRESSED, NITROGEN, INDUSTRIAL GRADE, 255 CF | 17307736 | 793.2 | |
| | WIRE, WELDING, TECHALLOY 606, TIG, 1/8" X 36"L, NICKEL, | 17307242 | 4,897.50 | |
| | WIRE, WELDING, TECHALLOY 606, TIG, 3/32" X 36"L, NICKEL | 17307242 | 971.7 | |
| Total | | | 12,539.44 | Materials for welder qualifications and onsite repair |
| AK SUPPLY | SPREADER,FLANGE, PRYING TOOL | 17306922 | 2,480.00 | |
| AK SUPPLY Total | | | 2,480.00 | A flange spreader tool to help with energy isolation. |
| ALASKA STEEL | STOCK, PLATE, 48"W, 96"L, 3/8" THK, INCOLOY 800H, ASTM | 17307224 | 6,634.11 | |
| Total | | | 6,634.11 | Material purchased for welder qualification and repair. |
| ARCTIC FIRE, INC | DRUM, STORAGE, OPEN HEAD, SEALABLE, STEEL, 55 GAL, CI | 17306888 | 1,576.00 | |
| Total | | | 1,576.00 | 16 "55" gallon drums to put contaminants in. |
| ASRC ENERGY SERVICES HOUSTON CONTRAC | CONTRACTOR SERVICES - DIRECT LABOR | 17300941 | 545,990.68 | General Labor, reduced by $13,687.50 for thermo couple |
| | | 17307128 | 27,700.99 | Zyme flow that did purging of flare stack. |
| | | 17307129 | 141,724.93 | Sweat Energies. Nitrogen to snuff the flare. |
| | | 17307130 | 108,879.60 | AFC Cranes to access the flare tip. |
| Total | | | 824,296.20 | |
| CARLILE TRANSPORTATION SYSTEMS, INC. | Freight | (blank) | 21.22 | |
| | FREIGHT 8-28-17 TO 9-3-17 | (blank) | 750.17 | |
| | FREIGHT 9-4-17 TO 9-10-17 | (blank) | 1,147.38 | |
| | FREIGHT 9-11-17 TO 9-17-17 | (blank) | 575.95 | |
| | FREIGHT 9-18-17 TO 9-24-17 | (blank) | 1,397.42 | |
| Total | | | 3,892.14 | Freight charges in getting materials to Pump 1. |
| COLVILLE INC | FUEL, ULSD, #1 DIESEL, ARCTIC GRADE, LIQUID, BULK, SARA | 17308437 | 22,915.41 | |
| Total | | | 22,915.41 | Delivery of ultra low sulfur deisel to run equipment. |
| FAR NORTH SUPPLY | COMPOUND, FILLER, METAL, SOLIDIFIER, 833 GMS, PASTE, | 17307453 | 573.66 | |

EXHIBIT D, Page 1 of 4

Case 3:19-cv-00101-HRH   Document 1-1   Filed 04/12/19   Page 38 of 41

EXHIBIT A
Page 38 of 41

| | | | | Amount | Notes |
|---|---|---|---|---|---|
| Total | | | | 573.66 | Contingency material for flare tip repair. |
| FEDEX EXPRESS | Freight | | (blank) | 399.78 | |
| Total | | | | 399.78 | Freight charges in getting materials to Pump 1. |
| FIRST NATIONAL BANK | ANDERSON,ROBERT E ARCTIC FIRE AND SAFETY | | (blank) | 1,152.00 | FRC rain gear. (disallowed) |
| | BYSTEDT,CHRISTOPHER N HYTORC | | (blank) | 1,875.00 | Hydraulic tensioner tool needed for isolation/ret. to svc. |
| | GEDRAITIS,BRIAN S WW GRAINGER | | (blank) | 1,134.32 | Flexible air hose used for air compressor connections. |
| Total | | | | 3,009.32 | |
| INDUSTRIAL SCIENTIFIC CORPORATION | 08/08/17-08/11/17 | | (blank) | 2,193.48 | |
| | SERVICE CHARGES | | (blank) | 2,600.00 | |
| Total | | | | 4,793.48 | Gas monitoring / proof of concept. |
| JOHN ZINK COMPANY, LLC | GASKET, 1", DONEX 660, CL 150, RF, 1/16" THK | 17307113 | | 110 | Gaskets associated with removal of flare tip. |
| | GASKET, 2", DONEX 660, CL 150, RF, 1/16" THK | 17307113 | | 64 | Same |
| | GASKET, 20", DONEX 660, CL 150, RF, 1/16" THK | 17307113 | | 106 | Same |
| | GASKET, 3", DONEX 660, CL 150, RF, 1/16" THK | 17307113 | | 40 | Same |
| | GASKET, 8", DONEX 660, CL 150, RF, 1/16" THK | 17307113 | | 390 | Same |
| | THERMOCOUPLE, BURNBACK, W/ 114' SHEATH, DWG B-F-9 | 17307035 | | 12,180.00 | Recommended by JZ to replace (disallowed) |
| | THERMOCOUPLE, PILOT, TYPE "K", W/ 114' SHEATH, DWG E | 17307035 | | 17,802.00 | Same (disallowed) |
| Total | | | | 710.00 | |
| LYNDEN AIRFREIGHT FWDRS, INC. | Freight | | (blank) | 10,405.00 | |
| | (blank) | | (blank) | 16,314.31 | |
| Total | | | | 26,719.31 | Equipment, material and parts for flare tip repair. |
| LYNDEN TRANSPORT | Freight | | (blank) | 727.32 | |
| | (blank) | | (blank) | 5,305.97 | |
| LYNDEN TRANSPORT Total | | | | 6,033.29 | Freight charges in getting materials to Pump 1. |
| MAXXAM ANALYTICS, INC | 08/23/17-08/24/17 | | (blank) | $704.00 | |
| Total | | | | $704.00 | Air quality testing required under OSHA and NIOSH. |
| NORTHWEST FLUID SYSTEM TECHNOLOGIES | CONNECTOR, TUBING, MALE, 8MM TUBE X 1/2" MNPT, 316 | 17306939 | | 321.52 | |
| Total | | | | 321.52 | Tubing materials provided for flare tip. |
| NRC ALASKA, LLC | CONTRACTOR SERVICES - WASTE MANAGEMENT/DISPOSAL | 17307828 | | 42,830.20 | |
| Total | | | | 42,830.20 | Removal and disposal of accumulated carbon deposits. |
| PUGET SOUND PIPE & SUPPLY | BOLT, STUD, 1/2" X 3", A320-L7, GALV,W/ 2 EA A194 GR4/C | 17307102 | | 261.2 | |
| | BOLT, STUD, 1-1/8" X 7", A320-L7, GALV,W/ 2 EA A194 GR4 | 17307102 | | 488.4 | |
| | BOLT, STUD, 1-1/8" X 8", A320-L7, GALV,W/ 2 EA A194 GR4 | 17307102 | | 993.6 | |
| | BOLT, STUD, 5/8" X 3-1/2", A320-L7 GALV, W/2EA NUTS A1! | 17306765 | | 236.4 | |

EXHIBIT D, Page 2 of 4

| | | | |
|---|---|---|---:|
| | BOLT, STUD, 5/8" X 4", A320-L7, GALV,W/ 2 EA A194 GR4/G | 17307102 | 87.36 |
| | BOLT,STUD,3/4" X 5",A320-L7, GALV, W/ 2 EA NUTS,A194-G | 17306765 | 694.8 |
| Total | | | 2,761.76 Materials for flare tip repair. |
| STALLION ROCKIES LTD | Stallion  8/1/2017 to 8/31/2017 | (blank) | 37,290.00 |
| | Stallion  9/1/2017 to 9/30/2017 | (blank) | 17,820.00 |
| Total | | | 55,110.00 Housing costs for workers during flare tip replacement. |
| STUSSER ELECTRIC COMPANY | CHANNEL, STRUT, SOLID, 1-5/8"W, 1-5/8"H, 12GA, GALVAN | 17306855 | 467.89 |
| Total | | | 467.89 Cable ties and unistrut (disallowed) |
| TEAM INDUSTRIAL SERVICES INC | CONTRACTOR SERVICES - INSPECTION | 17307432 | 11,013.78 |
| Total | | | 11,013.78 Inspection services (NDE) |
| TOTAL SAFETY U.S., INC | CONTRACTOR SERVICES - DIRECT LABOR | 17307637 | 41,962.08 |
| Total | | | 41,962.08 Phase array gas monitoring while flare was out of service |
| W.W. GRAINGER INC. | GAS, COMPRESSED, CALIBRATION, 58L, CYLINDER, 50% MET | 17307229 | $231.70 |
| Total | | | $231.70 |
| EQUIPMENT RENTALS | 1Q17 - 3Q17 Freight allocation adjustment | (blank) | 268.65 |
| | 3Q2017 Freight Allocation | (blank) | 158 |
| | Accrue BL Equip Rent 08/21-08/31/2017 | (blank) | 0 |
| | Accrue BL Equip Rent 09/18-09/30/2017 | (blank) | 0 |
| | AUG17 ACCRUAL-PS1 Flare Air Diffuser Cone Mech Failure | (blank) | 0 |
| | COMPRESSOR 1600 CFM  2006 | (blank) | 13,600.00 |
| | COMPRESSOR 1600 CFM  2007 | (blank) | 12,750.00 |
| | COMPRESSOR 1600 CFM  2011 | (blank) | 13,500.00 |
| | COMPRESSOR 1600 CFM  2014 | (blank) | 26,350.00 |
| | COMPRESSOR 375CFM 2014 | (blank) | 7,694.00 |
| | CRANE 90 TON ROUGH TERRAIN 2013 | (blank) | 3,440.00 |
| | GASKET, SPIRAL WOUND, 2", 150#, 304SS, 0.175" THK, FLE> | (blank) | 23.33 |
| | GASKET, SPIRAL WOUND, 48", 150#, 304SS, FLEXIBLE GRAPI | (blank) | 1,683.28 |
| | GENERATOR 100KW  TRAILER MOUNTED 2014 | (blank) | 9,600.00 |
| | GENERATOR 30KW CAT 2013 TRAILER MOUNTED | (blank) | 6,031.00 |
| | JUl17 ACCRUAL-PS1 Flare Air Diffuser Cone Mech Failure | (blank) | 0 |
| | LIGHT TOWER MAGNUM 8KW 2007 | (blank) | 300 |
| | MANLIFT Z135 DIESEL 2013 | (blank) | 10,400.00 |
| | MANLIFT Z135 DIESEL 2015 | (blank) | 10,400.00 |
| | OCT17 ACCRUAL-PS1 Flare Air Diffuser Cone Mech Failure | (blank) | 0 |

EXHIBIT D, Page 3 of 4

| | SEP17 ACCRUAL-PS1 Flare Air Diffuser | (blank) | 0 | |
|---|---|---|---|---|
| Total | | | 116,198.26 | Equipment rentals |
| | | | | |
| TOTAL OF REPAIR/REPLACE COSTS: | | | ($1,188,973.44) | |

EXHIBIT D, Page 4 of 4